Beatrice SEVERANCE, widow of Victor D. Severance

v.

STATE of Maine, DEPARTMENT OF TRANSPORTATION.

Supreme Judicial Court of Maine.

Aug. 5, 1974.

Peter Briola, Lincoln, Gross, Minsky, Mogul & Singal, P. A., by George Z. Singal, Bangor, for plaintiff.

Donald L. Beckwith, Legal Division, Dept. of Transp., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

On December 25, 1970, the deceased, Victor D. Severance, suffered an acute coronary occlusion while shovelling snow to free a snowbound truck in the course of his employment by the Department of Transportation of the State of Maine. An agreement between the employer and the employee that the employee should receive compensation for total incapacity was approved by the Industrial Accident Commission. Mr. Severance never returned to work and he received compensation for total incapacity from January 1, 1971 to the time of his death on March 3, 1973.

During the interval between his December 25, 1970 coronary occlusion and his death, Mr. Severance had been hospitalized in July of 1971, complaining of chest pain, and was found to have had an acute myocardial infarction. In February of 1972 he was again brought to the hospital in shock and in a condition of heart failure. Although his survival was doubtful for several weeks, he was again able to return home where he resumed a life of moderate activity combined with frequent rest periods. During this time he was under medication which included Coumadin, digitalis and diuretics.

After Mr. Severance's death his widow, the Petitioner, sought an award of death benefits under the provisions of 39 M.R.S.

A. § 58 and hearing was had on her petition. The Commissioner dismissed her petition and the matter comes before us on her appeal from a pro forma decree in the Superior Court affirming the dismissal.

The Petitioner testified that on the morning of his death Mr. Severance had intended to drive his truck to a neighboring town and had backed the truck out of the garage soon after eating his breakfast. Shortly after that she had found him dead on the garage floor. A heavy snowmobile which had been on the truck in the garage when she last saw it the previous day had been taken off the truck.

The Petitioner also presented as a witness Dr. Stanley J. Evans who first saw Mr. Severance at the time of his hospitalization in July of 1971. He saw Mr. Severance monthly until the February, 1972 hospitalization and then monthly or bimonthly until the death. The doctor described Mr. Severance as

> "an individual with classical coronary artery disease as evidenced by his cardiograms which showed classical changes and his course bore this out also."

He said that

> ". . . people with coronary artery disease are certainly prone to sudden death both with and without exertion."

He explained the underlying disease process was arteriosclerosis and that when the arteriosclerosis involves the blood vessels of the heart, the affliction is a coronary artery disease which as it progresses results in a narrowing of the vessels or even in an actual occlusion, both of which can cause what is commonly called a heart attack. Dr. Evans, it will be remembered, had not seen Mr. Severance until July of 1971—some six or seven months after the original disabling coronary attack. He

gave his opinion that the coronary artery disease from which his patient suffered did not develop de novo in 1971. He said:

> "This is something that was there previously, and I don't know how long it was there and when one says heart disease begins, and I would assume whatever happened in December of 1970 sounds— certainly sounds as if this were certainly some sort of cardiac episode."

The doctor expressed surprise that Mr. Severance had lived as long as he did in view of "the cardiac findings we had in 1971".

The employer had never disputed that Mr. Severance was still totally disabled (so far as ability to be gainfully employed is concerned) from his 1970 coronary attack. Inasmuch as Mr. Severance had never worked since December 25, 1970, his death would terminate the employer's liability unless it was shown to have been related to the original compensable injury.[1]

■ The Petitioner had the burden of satisfying the Commissioner by a fair preponderance that the work related injury which Mr. Severance suffered on December 25, 1970, for which he was still receiving compensation for total disability, was a contributing cause of the coronary attack which killed him on March 3, 1973. The issue became one of whether Mr. Severance's disabling coronary of 1970 caused damage to the body of Mr. Severance sufficient to bring about his death sooner than would otherwise have occurred—or whether the 1970 and 1973 coronaries were only unrelated episodes in the progress of deterioration resulting from the underlying arteriosclerosis.

■ It appears to us from our study of the record that counsel, the doctor and the Commissioner were each aware that this

---

1. The general rule noted in 1 A. Larson, The Law of Workmen's Compensation § 13 (1972) is that a later injury is compensable if it is a "direct and natural result" of the compensable prior injury, whether the second is an aggravation of the first or is new and distinct. Of course, it is axiomatic that the later injury is compensable if it resulted from the employment even if no relationship to the original injury is proved. No such claim appears to have been made here.

was the issue. We are seriously concerned, however, as to whether a misinterpretation of a crucial portion of Dr. Evans' testimony may not have affected the outcome of the hearing.

At the close of the Defendant's cross examination of Dr. Evans, we find this testimony:

> "Q Then you couldn't attribute the death to anything that happened December 25th of 1970, could you?
>
> A Well, not knowing what happened on that date—
>
> Q Well, I mean—Could you relate his death say to a heart attack that happened in 1970?
>
> A Well, I think I could relate it only by virtue of the fact that if he did have a heart attack on that day I'm saying that my opinion of what caused his death—based on information that has been given to me, I guess it was in March, I would say that in all probability he died of coronary artery disease. Now, whether that was related to what happened to him in January of 1970, I certainly have no way of knowing.
>
> Q Or December of 1970?
>
> A December of 1970."

The Commissioner dismissed the petition, ruling that

> "[i]t would be entirely speculative on the evidence available to conclude that a cause and effect relationship existed between the 1970 occurrence and the 1973 occurrence."

The possible misinterpretation of the doctor's testimony becomes apparent when we remember that Dr. Evans had not attended Mr. Severance at the time of his December 25, 1970 coronary and that, as far as the record shows the only information he had as to the circumstances of Mr. Severance's death was the widow's account of finding his body and her statement that another doctor had said that "he had another coronary and his death was instantly".

Was the doctor stating an opinion that it is medically impossible to determine whether there is a causal relationship between a coronary attack suffered in late 1970 and another suffered a little more than two years later? Or did the doctor intend to reply that without more information as to the nature of the December, 1970 episode and the nature of the March, 1973 fatal seizure he was unable to answer as to the existence of a relationship?

Reading this excerpt in the light of the previous testimony, we cannot be certain. It appears that the Commissioner adopted the first interpretation. We are concerned that such interpretation may have prevented further examination by him and counsel as to this critical aspect of the case.

We feel that the liberal intent of our workmen's compensation laws (In re Dudley, Me., 256 A.2d 592 (1969)) with its broad remedial goals and the danger of unintended injustice require that the matter be remanded to the Commission for further hearing. Without intending to announce a further departure from the traditional "one day in court" principle which generally underlies the determination of civil actions, we nevertheless feel that justice requires that this area be clarified by further evidence.

The entry will be:

Appeal sustained.

Remanded to the Industrial Accident Commission for further hearing.

Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of record, be paid by appellee to the appellant.

All Justices concurring.