### Bertha E. Ferris' Case.

Piscataquis.      Opinion, March 10, 1933.

*J. S. Williams*, for petitioner.
*E. F. Littlefield*,
*William B. Mahoney*,
*Theodore Gonya*, for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J.   In this case, a dependent widow claimed compensation for the death of her husband, a workman who had sustained compensable injury. The issue raised by the answer was whether death was the result of the industrial hurt. The claim was rejected by the Industrial Accident Commission, one Commissioner alone sitting; thereupon, a Justice of the Superior Court entered, as the statute requires, a decree to enforce such decision. R. S., Chap. 55, Sec. 40. This appeal was made, bringing forward the record. On appeals respecting the administration of the Workmen's Compensation Act, cognizance is taken of questions of law only.

The name of this workman was Lemuel O. Ferris. He had employment in a mill of the Old Town Woolen Company, at Guilford, as a card room helper. On November 6, 1930, while taking waste from a cylinder, a wire scratched his right thumb. Incapacity began, as a consequence, on November 10, 1930. On that day the injured man was attended by a physician. The doctor testified that the right thumb of his patient was scratched (looking as if by a comb), and filled with pus. There were red streaks running up the hand and arm. A few days afterward, an abscess which had developed on the forearm was opened. Fever gradually subsided. The wound appearing healed, Mr. Ferris was permitted to report for work. This he did on December 1, 1930. Later, on that same day, the doctor again treated him, being called to his house. The next day the patient said that his right hip was painful; on examination, it appeared inflamed. Treatment was for rheumatism. On December 5, another physician took over the case.

The first physician, while on the witness stand, expressed the opinion that in the light of subsequent developments, the condition of the patient's hip was the beginning of an infection there. He stated that the sick man had a scab on his left elbow; it had been

painted with an antiseptic called "mercurochrome," and did not then require treatment.

The new physician found Mr. Ferris delirious; his temperature was 103 or 104. He complained of severe pain in his right hip; his right arm and shoulder were red and swollen. A scar on the right hand was recently healed; there were scabs with pus beneath them on the left elbow and hip. The man was vomiting, and had diarrhea. The second day symptoms were much worse — the swelling continuing, and a poisonous condition of the whole system existing. On the third day pustules had formed in the mouth and throat, and pus was being coughed, as from the lungs. The diagnosis was septic pyemia, which could be attributed to traumatic infection in the thumb.

On December 12, a third physician was called, in consultation. He witnessed that there were numerous sores on Mr. Ferris' body, that his heart sounds were weak and feeble, his temperature high, and his mind wandering. It was evident, he testified, that the man was dying. To a question on cross-examination, the witness answered that if prior to hurting the thumb, there had been a sore on the workman's hip, it would be impossible to say which was the cause of the blood poisoning. In connection with his other testimony, the witness plainly meant that in such case he could not determine the precise origin.

Mr. Ferris died December 14, 1930. The cause of his death was given as general septicaemia, with inflammation of the lining of the cavities of the heart superimposed.

Witnesses for the defendant gave testimony that two or three weeks before the injury to his thumb, the employee, who was their fellow workman, had a boil on his left hip. The dead man's widow and son testified, in rebuttal, that they had not known of any such affliction.

The defense called to the witness stand a physician who had neither seen the man who sickened and died, nor had to do with his case. It was ruled that the knowledge and experience of the witness had fitted him to give expert testimony on the medico-legal questions which the case involved.

During the cross-examination, the Commissioner interrupted to ask:

"Is it possible, Doctor, for any physician, in view of the case as outlined in the record, to say with any degree of certainty the source from which this infection came?"

The witness answered:

"I don't believe anyone could say definitely that it came from either one of the possible sources to the exclusion of the other."

The Commissioner, in his findings, makes no specific reference to the testimony of the medical witnesses who had treated the patient, or that of him called in consultation. What they observed, what their diagnoses were, how they treated him, and what the results were — or their opinions as to the causing of the condition and the ultimate effect — are not set forth in the findings.

The question put to the expert, and his answer thereto, are recited at length. The Commissioner then concludes:

"A painstaking review of all the testimony properly before us leads to the conclusion that it is impossible to say with any degree of certainty, the source of the infection which caused Mr. Ferris' death. Any attempt to state the source, under the conditions presented, would be pure conjecture."

The claimant had the burden of proving that the scratching of her husband's thumb, and the setting in of septicaemia, caused or contributed to his death.

An award in a compensation case cannot rest merely upon imagination or possibility, or upon a choice equally compatible with an accident and with no accident. However, it is not necessary that facts be proven to any higher degree than that necessary under the settled rule of finality (except in cases of fraud) of decisions of fact. R. S., Chap. 55, Sec. 36; *Mailman's Case*, 118 Me., 172, 106 A., 606; *Anne Martin's Case*, 125 Me., 49, 130 A., 857; *Mamie Taylor's Case*, 127 Me., 207, 142 A., 730; *Farwell's Case*, 128 Me., 303, 147 A., 215. Probative evidence of essential elements, though slight, yet sufficient to make a reasonable man conclude in the petitioner's favor on the vital points, will suffice. *Westman's Case*, 118 Me., 133, 106 A., 532; *Mailman's Case*, supra; *Gray's Case*, 120 Me., 81, 113 A., 32. But the rational mind must not be left in such uncertainty that these elements are not removed from the realm of fancy. *Marshall* v. *Owners of Steamship*

*Wild Rose* [1910], A. C., 486; *Sponatski's Case*, 220 Mass., 526, 108 N. E., 466.

Death need not be shown to have resulted from a sole source. Death resulting from the concurrence of an accident and a disease has been held to be compensable. *Healey's Case*, 124 Me., 54, 126 A., 21. So the acceleration of a previously existing disease to a mortal end, sooner than otherwise it would have come, has been held in Massachusetts to be compensable. *Fisher's Case*, 220 Mass., 581, 108 N. E., 361. The death of an employee, thrown from a horse and dragged, was held, on the evidence, to have been caused from hastening disease from which, preceding such accidental injury, the employee had temporarily recovered. *Lachance's Case*, 121 Me., 506, 118 A., 370.

If, by weakening resistance, or otherwise, a compensable injury so influences the progress of an existing disease as to cause death, the proof in that regard need not establish more. *Mailman's Case*, supra; *Orff's Case*, 122 Me., 114, 119 A., 67.

In a common-law action, a plaintiff, upon whom the law casts the burden of proof, is entitled to a verdict of a jury, or, in an equity case, a finding by a judge, if the evidence preponderates to his side. The Industrial Accident Commission, as an administrative or quasi-judicial tribunal, occupies a plane where, by legislative provision, the preponderance of evidence rule is without application. If, in a case like this at bar, the petitioner's evidence, with its logical inferences, is, on the fundamental issue of causal relation between compensable injury and death, reasonably convincing, the requisite degree of proof is attained, notwithstanding that opposing evidence is of even greater weight. *Mailman's Case*, supra; *Farwell's Case*, supra.

It is insisted, in the brief for the respondent, that the finding by the Commissioner is final and conclusive. *Gauthier's Case*, 120 Me., 73, 113 A., 28. No such rule prevails where, as here, the finding and decree are against the claimant. *Orff's Case*, supra.

The issue before the Commission was whether competent evidence reasonably supported the allegation that the result in question came from the source alleged. The negation of every other possibility of death except that by accidental means was unnecessary. *Westman's Case*, supra.

The present record contains testimony which, if the trier of facts favorably determines its credibility, would, with circumstantial inferences, sufficiently substantiate the allegations of the petition, that death resulted from compensable injury.

The appeal is sustained. The decree from which the appeal was taken is reversed, and the case remanded to the Industrial Accident Commission without prejudice to further proceedings under the Workmen's Compensation Act.

*So ordered.*