BAKER'S CASE

Kennebec. Opinion, November 10, 1947.

*McLean, Southard & Hunt,* for petitioner.

*William B. Mahoney,*
*James R. Desmond,* for respondents.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MURRAY, JJ.

MURCHIE, J. The petitioner herein, an employee of an assenting employer under the Workmen's Compensation Act (R. S. 1944, Chap. 26), suffered an industrial accident on January 29, 1945, resulting in the loss of his left eye and damage to his right. He was paid the specific compensation fixed by statute for the loss of an eye, under a compensation agreement approved October 5, 1945, which carries the usual provision that additional compensation for subsequent incapacity should be paid. His present petition, dated and filed December 3, 1946, alleges that the period of specific compensation was to end on December 28, 1946, and seeks "further compensation on account of total incapacity" subsequent to that date. It was heard March 12, 1947. The decision of the Chairman of the Industrial Accident Commission, dated July 2, 1947, carries findings that the petitioner is totally incapacitated and that a nervous condition is the cause of his disability. It dismisses his petition on the ground that the evidence does not establish factually that the condition is due to the industrial accident.

A *pro forma* decree was entered in the Superior Court on July 16, 1947, on a petition filed by the employee alleging, among other things, that the accident resulted in a severe nervous condition and neurosis; that there is no evidence showing an intervening or independent cause of the condition; and that the commission decision was based on incompetent evidence and evidence without probative force, and disregarded evidence of probative force favorable to the

petitioner. An appeal was taken in the usual form upon the filing of the decree.

The verbal testimony was given almost entirely by the petitioner. The oral statements of two physicians and written letters or reports of four others were admitted in evidence without objection. Included in the record are transcripts of the petitioner's post-injury employment data with four employers, furnished after the hearing was closed in accordance with a right reserved to the employer with the consent of counsel for the petitioner. The necessity for securing them developed in petitioner's inability to recall the dates and wages involved.

The employment records show that petitioner worked part or all of more than thirty-six weeks during the last approximate sixty weeks of the one hundred weeks he was drawing specific compensation. He was engaged for a little more than eighteen consecutive weeks at one job, at an average pay in excess of $44 per week, and something over one week at one time and ten later, just prior to the close of the specific compensation period (not always for full time) at another, which yielded him average weekly pay of less than $25. He did not work after the close of the period of specific compensation for a little more than seven weeks but had been employed about three weeks at the time of the hearing, working forty hours in each of two and thirty-two in the third, the hearing week. His own testimony shows that he worked a short period for one additional employer but the time and wage record for it are not in evidence. The petitioner worked some part or all of each and every week in the four months immediately preceding the close of the period of specific compensation except the interval from August 29th to September 19th and went hunting during that interval. The medical reports show that his blood pressure was taken by a physician to whom he was sent by his employer on October 8, 1946, and by his own physician on December 30, 1946. The increase in pressure from 130/90 on the earlier date to 180/120 on the later one stands unex-

plained in the record, and is one of the stated grounds for the denial of compensation:

> "We do not find any evidence to account for such a rapid change * * *. We * * cannot * * * find that such a change * * * was a result of his injury * * *."

The testimony of the petitioner is that in each and every case his post-injury employments terminated with headaches, nausea or other sickness, the first symptoms of which were manifested by pain in the right eye or in the socket from which the left had been removed. His testimony asserts many hours of acute pain which he attributed to the same sources.

There is no question of the severity of the injuries suffered by the petitioner; of his present incapacity; or that it is traceable directly to a nervous condition. A factual finding by the commission that the condition was caused by the accident of January 29, 1945, or to a pre-existing mental state accelerated or aggravated thereby, would have entitled the petitioner to further compensation. *Reynold's* case, 128 Me. 73; 145 A. 455. Such a finding was not made.

The physicians held conflicting views concerning the vision of his right eye and the cause of the mental condition. His own physician, on December 30, 1946, stated that he had "very little sight left" in the eye. Two others recorded respectively that the vision was 20/30 without refraction and 20/15 with on May 15, 1945, and that it was "normal plus" on April 11, 1946. The physicians who made oral statements connected the mental condition with the industrial accident. One believed it·"connected with and attributable" thereto and explained that in his opinion it would go on until the question of compensation was cleared up. He described the neurosis as functional, but had no view as to whether it was traceable to an organic cause. The other believed it was "directly attributable" to the accident, and said it would commonly be known as a "traumatic neurosis."

There was no attempt to explain the term medically or to distinguish between a neurosis traceable to an organic cause and one that was not. A neurologist was of opinion that there was no "organic neurological basis" for petitioner's condition and that it would be "unusual to have any residuals" from the type of injury he had suffered.

The fundamental principles of law relied on by the petitioner are thoroughly established. These are that notwithstanding the plain recitals of the Workmen's Compensation Act that factual decisions of the Industrial Accident Commission shall be final "in the absence of fraud" and that no appeal will lie "upon questions of fact" (Secs. 37 and 41), such decisions must be guided by legal principles, *Robitaille's Case,* 140 Me. 121, 34 A. (2nd) 473, and will be set aside if based in any degree on the misapprehension of undoubted facts, *Hinckley's* case, 136 Me. 403; 11 A. (2nd) 485. The application of these principles to the present case is the issue which must control.

The situation presented may be demonstrated by comparing the decision under review with those in *Reynold's* case, *supra,* and in *Hunnewell's* case, 220 Mass. 351; 107 N. E. 934. In both of those cases awards of compensation were sustained. In both the trier of facts found causal connection between a compensable injury and a mental condition. As this court said, speaking of the commissioner:

"He found the fact."

As stated by the Massachusetts court, the Accident Board found that the employee:

"was 'partially incapacitated for work by reason of a condition of hysterical blindness and neurosis, said condition having a causal relation with the personal injury.' "

The issue of causal connection is one of fact. *Kilpinen's* case, 133 Me. 183; 175 A. 314; *McCarthy's* case, 231 Mass. 259; 120 N. E. 852. The statement of the Massachusetts court in the latter case presents the situation here disclosed with entire accuracy:

> "The crucial question * * * was, whether any causal connection was shown * * *. The record shows that while there was some testimony tending to show that there was such connection, there was other testimony tending to show that there was no such connection. Its weight and credibility were for the Industrial Accident Board. The decision * * * has ample support in the evidence * * *."

Counsel for the petitioner argues that the case presents two issues; first, whether neurosis resulting from injury is compensable, and second, whether the evidence was erroneously evaluated. Since the decision in *Reynold's* case, *supra*, it can hardly be said that there is an issue on the first. The second must be resolved within the long established principle that in compensation cases (as in other matters) the moving party has the burden of proof. This was reaffirmed a little more than two years ago in *Hawkins* v. *Portland Gas Light Co. et al.*, 141 Me. 288; 43 A. (2nd) 718:

> "The ruling * is firmly established * * * since the earliest construction of the statute * * * that the burden rests upon the claimant to prove the facts necessary to establish the right to compensation."

In a reply brief counsel for the petitioner stresses the point that his opponent cites no evidence on which the decision could have been based. This is an attempt to reverse the norm since under the true rule it is his burden to cite controlling evidence that required a decision of opposite effect. This he attempts to do by referring to a particular part of the medical evidence. In its essential parts all of this has been summarized heretofore. It was the duty of the commissioner to consider and weigh it as a whole, as he recites he did in determining that causal connection had not been proved. There was evidence that would have justified a contrary finding, but we have no reason to suppose that he was under any misapprehension about it. His decision makes it plain that the post-injury work record and the

opinion of the neurologist, and perhaps other items of evidence, left him convinced that the petitioner had failed to prove the causal connection that alone would have entitled him to compensation. The language used in *Weliska's* case, 125 Me. 147; 131 A. 860, is pertinent:

"As the compensation law is, the right to decide facts is invested exclusively in the Industrial Accident Commission, and the province of that tribunal may not be invaded by an arbitrary unauthorized court order that certain testimony must be accepted as involving both persuasion and decision."

*Appeal dismissed.*
*Decree below affirmed.*