Reno SOUCY

v.

**FRASER PAPER, LIMITED.**

Supreme Judicial Court of Maine.

July 28, 1970.

Joel R. Leblanc, Madawaska, for plaintiff.

Mitchell & Ballou, by John W. Ballou, Bangor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

WEATHERBEE, Justice.

On July 22, 1967 the Petitioner, then a man of 55 years, while employed by Fraser Paper, Limited as a paper machine operator in its Madawaska mill sustained a personal injury by accident arising out of and in the course of his employment. While running to assist one of his helpers coping with an emergency regarding a machine he stepped into a puddle of coating which had leaked onto the floor. His feet flew up into the air and he landed on the cement floor on his right hip, shoulder and the back of his head. He was dazed and suffered pain in the right side of his shoulders, neck and the occipital area of his head. The Petitioner was treated by a mill First Aid man that day and the next day, as the pain continued, he consulted the mill physician who instituted a program of heat treatment for the injured parts. Petitioner continued to work but the pain persisted and the mill physician referred him to an orthopedic specialist who took x-rays and commenced a program of traction of the neck combined with exercise which Petitioner followed for about six months but without improvement in his condition. His condition had, in fact, worsened during this time. In the meantime, about 6 weeks after the accident, he noticed a progressive weakness, first in his

legs and then in his arms. The pain continued in his hips, head, shoulders and right side. On September 26, 1967 his condition forced him to stop work and he petitioned for compensation. He has been unable to work since.

On November 22, 1967 the Petitioner and Employer filed with the Commission an agreement as to a payment of compensation properly executed and approved by the Commissioner of Labor. 39 M.R.S.A. § 94. The agreement recited that the injury was a "neck strain" and that the period of incapacity commenced September 26, 1967 and was still continuing. The agreement was approved by an Industrial Accident Commissioner and payment of compensation to the Petitioner commenced.

Petitioner's physical condition continued to deteriorate. The pain persisted and weakness increased. The orthopedic specialist referred the Petitioner to a physician in New Brunswick who committed Petitioner to a hospital for several days study. This was followed by hospitalization in Bangor and examination by a neurologist. On March 11, 1968 Petitioner was examined in the Montreal Neurological Hospital and there it was determined that the Petitioner was then suffering from amyotrophic lateral sclerosis which is a degenerative disease of the neuron tissue also spoken of as motor neuron disease. Its cause is unknown. In July of 1968 this grim diagnosis was confirmed by two specialists in Portland after neurological examination of the Petitioner at the Maine Medical Center.

On July 31, 1968 the Defendant employer petitioned for review of incapacity alleging that the incapacity for which the Petitioner was being compensated had diminished or ended. 39 M.R.S.A. § 100. At the time of hearing in September, 1968, the pain still persisted and Petitioner's control of his arms and legs had become seriously impaired.

This petition was heard before a Commissioner who found that the Petitioner's incapacity due to his injury had ceased and that his present incapacity was due to motor neuron disease, unrelated to the injury of July 22, 1967.

The matter comes to us on Petitioner's appeal.

■ We have repeatedly recognized the rule that on appeal from the decree of an Industrial Accident Commissioner the Commissioner's findings of fact are final if they are supported by competent evidence and reasonable inferences which may be drawn therefrom. 39 M.R.S.A. § 99; Shaw's Case, 126 Me. 572, 140 A. 370 (1928).

■ In examining the record to determine if there was credible evidence which, with inferences which could reasonably be drawn therefrom, supports the Commissioner's decree, we must bear in mind two principles. First, the burden of proof rests here upon the Defendant as the moving party. Baker's Case, 143 Me. 103, 55 A.2d 780 (1947). Second, the Commission's approval of the agreement for compensation of November 22, 1967 determined finally that at that time Petitioner's incapacity was a result of the fall of July 22, as effectively as a legal judgment would have determined it. Healey's Case, 124 Me. 54, 126 A. 21 (1924). The incapacity continues to be compensable until the Defendant demonstrates by a fair preponderance of the evidence that the effect of the accident has ended.

■ Petitioner's present incapacity would continue to be compensable:

1) If the fall is the sole cause of the present incapacity.

2) If the fall caused or precipitated the neurological disorder or if the neurological disorder existed before the fall and was aggravated by the fall. Goldthwaite v. Sheraton Restaurant, 154 Me. 214, 145 A.2d 362 (1958).

3) If effects of the fall and of the neurological disorder combine to produce

the incapacity. Gagnon's Case, 144 Me. 131, 65 A.2d 6 (1949).

Defendant's burden was to negate all three of these propositions.

Certainly the medical evidence before the Commissioner was overwhelmingly to the effect that Petitioner is now afflicted with motor neuron disease.

The Commissioner heard the testimony of outstanding medical experts of unquestioned repute. They were questioned at length as to whether the accident could have caused, precipitated or aggravated the motor neuron disease. In short, Dr. Kunkle *thought it very unlikely* that the fall caused, precipitated or aggravated the motor neuron disease but he "would not rule out any factor in a disease whose cause is unknown". Dr. Lorentz *did not believe* the fall caused Petitioner's incapacity but said, "Trauma could could be an aggravating factor in this particular instance. * * * I could not rule it out, no sir." Dr. Levesque's answer was that although he could not say that the fall would affect the development of the disease, since it is a disease of unknown cause, no one can say that it could not do so.

In effect, the opinions of the medical experts were that while two of them do not believe that the fall caused, precipitated or aggravated the disease, they cannot rule out the fall as a factor. The Petitioner argues that these opinions do not constitute "competent evidence" which would support the Commissioner's decree, especially when the experts agree that the cause of the disease is unknown to medical science. (Somewhat similar medical testimony is found in Bradbury v. General Foods Corporation, Me., 218 A.2d 673 (1966).)

■ We do not find it necessary to answer this question, however, as it appears that there was no competent evidence before the Commissioner from which he could have concluded that the fall had *ceased* to be a contributing factor to Petitioner's incapacity. Gagnon's Case, supra. The entire evidence directly bearing on this issue follows:

The Petitioner himself testified that he still suffered the pains in his side, hip, back and neck which followed the accident and on being asked "and do you think you could work now because if you were subject to only the pains in your neck and back, you think you could work?" Petitioner's answer was "No".

The Commissioner also had before him Dr. Kunkle's report in which he stated:

"By history, probable cervical strain and contusion of right buttock in fall at work 1 year ago; the persisting pain *may be due in part, at least,* to his mild degenerative arthritis of the spine and to secondary muscle contraction, associated in part with emotional tensions, in the present illness." (Emphasis added.)

In testimony Dr. Kunkle phrased his answer somewhat differently:

"From his history I thought he probably had sustained a cervical strain and a contusion of his right buttock in his fall. I thought *in addition* that the persisting pain in his neck *might represent—could represent* the arthritis of his spine which was described by history perhaps combined with muscle contraction in the areas of pain, particularly the neck as part of the emotional tensions which occurred in this illness." (Emphasis added.)

If this latter phraseology suggests, as Defendant argues, that the doctor was of the opinion that Petitioner's condition in September, 1968 was no longer related to the accident, his later testimony appears to make clear a contrary opinion.

"Q Do you feel there is any connection between his inability to work and the spine injury he suffered, if you can divorce the two?

A It would be impossible to divorce the two. I believe the secondary diagnosis I made with reference to per-

sisting pain would represent an added factor impairing his ability to work.

Q  Do you feel that if he did not have the motor neuron condition and only had as a result of this accident, the cervical injury you have described, he would be able to do any work in your opinion? I know this is difficult, Doctor.

A  It is difficult, but I suspect, although I have no firm opinion, that if the illness were only my secondary diagnosis, Number 2, that he would probably be able to carry out some type of activity for which his training would be.

Q  What would be the limits caused by the cervical injury?

A  I am not certain, but suspect that he would be prevented from carrying out strenuous duties.

Q  Lifting type of thing, perhaps?

A  Yes.

Q  Bending?

A  Yes.

Q  He could walk perhaps?

A  I would believe it probable that he could.

Q  He could do a clerk's work?

A  Yes, if he were otherwise equipped for this.

Q  If he were trained for this?

A  Yes."

We recognize that the Commissioner is not required to base his findings upon medical opinion alone but that sound and rational conclusions may often be drawn from facts proven and inferences which can logically be drawn from them. Crowley's Case, 130 Me. 1, 153 A. 184 (1931); Swett's Case, 125 Me. 389, 134 A. 200 (1926). We find the record to be bare of any other evi-

dence competent to lead a layman to conclude that the effects of the cervical injury had ceased to be a causative factor in Petitioner's incapacity.

Appeal sustained. Ordered that there be paid by the Employer to the Employee a fee of counsel in the amount of $350.00 plus cost of record.