Gilbert GUERRETTE

v.

FRASER PAPER, LIMITED.

Supreme Judicial Court of Maine.

Dec. 3, 1975.

Alfred E. LaBonty, Jr., Madawaska, for plaintiff.

William J. Smith, Van Buren, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

This is an appeal from a pro forma decree of the Superior Court which adopted a decree of the Industrial Accident Commission denying compensation to Mr. Guerrette. We deny the appeal.

Mr. Guerrette claimed that while in the employ of Fraser Paper, Limited, and during the course of that employment, he accidentally injured his back. He testified that while climbing a ladder to close malfunctioning elevator doors he attempted to reach these doors, slipped and fell some "three or four feet" to a cement floor, landing on his back. Some *twenty months* thereafter an orthopedic surgeon removed a degenerated disc between L 4 and L 5.

The sole issue is whether this surgical procedure was necessitated by the fall, the Commissioner having concluded that "the evidence is insufficient to conclude that Mr. Guerrette sustained a ruptured disc as a result of the fall alleged in the Petition."

39 M.R.S.A. § 99 provides in part:

"His [the Commissioner's] decision, in the absence of fraud, upon all questions

of fact shall be final *but* whenever in a decree the commission *expressly rules* that any party has or has not sustained the burden of proof cast upon him, the said finding shall not be considered a finding of fact but shall be deemed to be a *conclusion of law* and *shall be reviewable as such.*" (Emphasis supplied.)

We recognize the Commissioner's finding the evidence "insufficient" to establish the necessary connection between the appellant's disability and the claimed industrial accident is equivalent to a finding that the claimant had not sustained his burden of proof. If 39 M.R.S.A. § 99 requires us to treat as a conclusion of law any ultimate finding which denies a petitioner relief, then the operative effect of Section 99 would require the Law Court to review the entire record and make findings of fact independent of those made by a commissioner.

In order to comprehend fully the proper scope of appellate review under Section 99, it is necessary to trace the history of this section from the original enactment in 1915.

P.L.1915, ch. 295, § 34, provided:

"His [commissioner's] decision in the absence of fraud, upon all questions of fact shall be final."

In early cases this Court adhered to the position that the commissioner's findings of fact will not be reversed if supported by some competent evidence. *Gauthier's Case,* 120 Me. 73, 78, 113 A. 28, 31 (1921); *Mailman's Case,* 118 Me. 172, 177, 106 A. 606, 608 (1919). However, in *Orff's Case,* 122 Me. 114, 116, 119 A. 67, 67–68 (1922), the Court, after reasserting that findings of fact are final when found *in favor* of a petitioner, went on to announce that no such rule prevails when the findings are *against* the petitioner. The same rule was reiterated in *Ferris' Case,* 132 Me. 31, 35,

165 A. 160, 162 (1933); *see also McNiff v. Town of Old Orchard Beach,* 138 Me. 335, 337, 25 A.2d 493, 494 (1942); *Weymouth v. Burnham & Morrill Co.,* 136 Me. 42, 44, 1 A.2d 343, 344–45 (1938).

In a subsequent case this Court overruled the holding in *Orff's Case* (and its progeny), recognizing there was no statutory authorization for a distinction between findings for or against a petitioner and announced the rule that where "there was competent evidence in favor of the claimant and of the defendant respectively," it became the problem of the Commission to determine whether the claimant had sustained the burden of proof, "a question of fact which cannot be disturbed by this court." *Robitaille's Case,* 140 Me. 121, 127, 34 A.2d 473, 475 (1943); *see also Houle, Aplt. v. Tondreau and Aetna,* 148 Me. 189, 91 A.2d 481 (1952); *Albert's Case,* 142 Me. 33, 45 A.2d 660 (1946).

In 1961 the 100th Legislature enacted P.L.1961, ch. 316, which is now 39 M.R.S.A. § 99. We have never viewed the 1961 amendment as a restoration of the rule in *Orff's Case,*[1] *supra.* Since 1961 we have repeated the well established principle that we have no authority to deviate from findings of fact, and the reasonable inferences drawn therefrom, made by a commissioner which are supported by competent evidence. *Harlow v. Agway, Inc.,* 327 A.2d 856 (Me.1974); *Overlook v. Eastern Fine Paper, Inc.,* 314 A.2d 56 (Me.1974); *Soucy v. Fraser Paper, Limited,* 267 A.2d 919 (Me.1970). This has been equally true whether the commissioner's findings were in favor of or against the petitioner. *See Bolduc v. Pioneer Plastics Corporation,* 302 A.2d 577 (Me.1973); *Cote v. Allied Chemical Coatings, Inc.,* 249 A.2d 528 (Me. 1969).

■ We view the legislative purpose in amending the predecessor to 39 M.R.S.A. § 99 as a desire to eliminate dismissal of pe-

---

1. An examination of the legislative record of the 100th Legislature fails to disclose any debate or other evidence tending to disclose the purpose underlying the enactment of chapter 316.

**262**

titions on the unexplained ground that a party has failed to sustain his burden of proof. The Commission has the duty to make *specific* findings of basic ultimate facts upon which its order is predicated.[2] In making such findings the Commission establishes an adequate foundation for appellate review, namely, the existence, or nonexistence, of competent evidence. The bare assertion that a petitioner has failed to sustain his burden of proof provides no basis for appellate review, and we have often decried the practice of merely reciting, without adopting or rejecting, the testimony given before the Commission. *See, e. g., Bolduc v. Pioneer Plastics Corporation, supra.*

■ We thus conclude that Section 99 authorizes the Law Court to make independent factual evaluations from the record only in those cases where a commissioner has failed to do so and has founded his decision solely on the assertion that a petitioner has failed to sustain the burden of proof.

■ In the present case the Commissioner did more than merely recite the evidence and conclude that the claimant had failed to sustain his burden of proof. After outlining the testimony given at the various hearings, he concluded that "there is no definite statement from the medical witnesses that the fall was, in fact, the cause of the disc injury or that it is more likely than not that it was the cause." This was a conclusion of fact supported by competent evidence from which we are not authorized to deviate.

Appellant argues that the Commissioner based this ultimate conclusion on a misapprehension of the medical testimony of two orthopedic surgeons, because (so he argues) the Commissioner conceived their testimony to admit only that the accidental

fall was merely a *possible* cause, as opposed to being the *probable* cause, of the injury.

The first orthopedist (who did not perform the surgery) premised his diagnosis of *probability* on the history given him by Mr. Guerrette, despite two negative myelograms. This specialist was unaware of a past history of low back pain and, being reminded of this on cross-examination, agreed "it is no more than a possibility that [Mr. Guerrette had] a herniated disc."

The surgeon who removed the disc, having testified on direct examination that the accident was "the probable cause of this disc injury,"[3] on cross-examination, however, testified:

"Q. And you would not be able to tell us with reasonable medical certainty that the accident of January 7, 1973 caused the back condition you discovered?

A. No I have no medical proof of that."

. . . . . .

"Q. And it would be also true . . . that you would not be able to tell us with reasonable medical certainty that the accident aggravated or accelerated the medical problem that we discussed?

A. I have no proof of that."

Appellant's concern with the Commissioner's decree is one of semantics. Although both doctors initially used the word "probable" in relating the accident to the injury, they later modified this testimony. The Commissioner, in summarizing, used the word "possible," thus leading to the argument that he misapprehended the impact of the doctors' testimony. We view the decree otherwise, deeming the Commissioner's language to be a fair characterization of the evidence taken in its totality.

2. *See LeClerc v. Gilbert*, 152 Me. 399, 131 A.2d 202 (1957).

3. Mr. Guerrette had several years previously been operated on for fallen arches; additionally, one leg was an inch shorter than the other, resulting in poor posture.

263

Unlike the factual background in *Severance v. State Department of Transportation*, 324 A.2d 314 (Me.1974), the decree here appealed from is not the result of a misinterpretation of medical testimony. Since the ultimate factual conclusion "is supported by rational and natural inferences from proven facts," it may not be reversed on appeal. *Overlock v. Eastern Fine Paper, Inc.*, 314 A.2d 56, 60 (Me. 1974); *Soucy v. Fraser Paper, Limited*, 267 A.2d 919 (Me.1970).

The entry is:

Appeal denied. Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of record, be paid by appellee to the appellant.

All Justices concurring.