Dianne D. BROWN

v.

MAINE MEDICAL CENTER and/or
Seaboard Fire & Marine
Insurance Company.

Supreme Judicial Court of Maine.

Aug. 3, 1978.

Drummond & Drummond by John B. Emory, Portland (orally), for plaintiff.

Robinson, Hunt & Kriger by Sarah M. Allison (orally), Roy E. Thompson, Jr., Portland, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Dianne D. Brown petitioned the Industrial Accident Commission on August 26, 1976 to be awarded compensation for incapacity resulting from a back and leg injury sustained by her while she was employed by the Maine Medical Center. After hearing, the Commission awarded petitioner compensation of $116.68 per week for total incapacity during the period May 1, 1976 through August 15, 1976.

Petitioner, dissatisfied with the Commission's determination as to the dates of commencement and termination of the period of incapacity, has appealed from the judgment entered pro forma in the Superior Court on the Commission's decree.

We sustain the appeal in part and remand the case to the Commission for further proceedings.

The evidence disclosed that in the course of her duties as a registered nurse employed by the Maine Medical Center petitioner on February 27, 1976 was assisting a patient into bed when she slipped and fell against the bed and immediately experienced pain in her abdomen, leg and back.

At the time, petitioner was in the sixth, or seventh, month of pregnancy. Petitioner testified that from the time of the fall which caused her leg and back injuries she was unable to work as a nurse. She tried working on March 8, 1976, but because of the pain she could not continue and found it necessary to consult a doctor in the emergency room of the hospital. She was there advised to consult her family doctor. On March 10, 1976, she saw Dr. Kenneth Gluck and complained to him of back and leg pain. Dr. Gluck injected cortisone into her back and told her that it would take time for her back and leg to heal.

On March 19, petitioner complained to Dr. Gluck of vaginal bleeding. The doctor placed her in the hospital where, soon thereafter, she gave birth to a child by caesarean section. On March 25, petitioner was discharged from the hospital.

Petitioner testified that it took her 4 to 6 weeks to recover from the caesarean section. She said that her leg and back pain remained the same, and she sought no further medical attention for it until July, 1976 when she was able to arrange for an August 16th appointment with Dr. Donald Booth, an orthopedic physician. During his examination of petitioner Dr. Booth made a notation that petitioner told him that her back pain had become intermittent but her leg pain had remained constant. Dr. Booth's diagnosis was that petitioner suffered from some nerve root irritation resulting from pressure on the sciatic nerve. He believed that therapy was unnecessary, but he recommended that petitioner maintain a low level of activity to avoid aggravation of the pain in her back and leg. It was Dr. Booth's opinion that petitioner's back and leg pain was more likely related to the trauma of the injury she sustained at work than to her pregnancy.

After she was examined and diagnosed by Dr. Booth in August of 1976, petitioner sought no further medical attention.

*1.*

Petitioner's first contention is that the Commissioner was wrong in deciding that her total incapacity did not commence until May 1, 1976, two months after she had been injured by falling.

The Commissioner, even though acknowledging that petitioner suffered immediate pain in her leg and back when she fell on February 27, 1976, nevertheless thought it

"unreasonable to *assume* that disability prior to the birth was due to the incident of February 27, 1976." (emphasis supplied)

Moreover, notwithstanding his express avowed statement that "[t]estimony is lacking as to an actual commencement date of incapacity following the pregnancy", the Commissioner stated that:

"Mrs. Brown should have been in good physical condition on or about May 1, 1976 had she not injured her back at work."

We are mystified by this approach of the Commissioner, more particularly in view of his explicit determination that petitioner did in fact become totally disabled because of the fall which occurred on February 27, 1976. With the fall established as the cause of petitioner's total disability, we see no reason for the Commissioners analysis in terms of *assumptions* :—first, to say that it is "unreasonable to *assume* that disability prior to the birth was due to the incident of February 27, 1976" (emphasis supplied) and, second, to indulge in the contrary to fact hypothesis that "had she not injured her back . . .", petitioner ". . . should have been in good physical condition on or about May 1, 1976 . . . ." The record contains affirmative evidence that immediately after her fall petitioner began to suffer pain in her leg and back which

prevented her from working thereafter. Since the pain in petitioner's leg and back and her subsequent total disability are acknowledged by the Commissioner as attributable to the fall, we fail to understand why the Commissioner avoids analyzing the claimed incapacity of petitioner after February 27, 1976 and prior to March 19, 1976 (the date of the birth) on the basis of the actual evidence adduced rather than by creating a straw man "assumption" to be knocked down as "unreasonable." We must conclude that in this facet the Commissioner's determinations need supplementation by a more particularized analysis of the actual evidence and by additional findings of fact made on the basis of that analysis. See *Guerrette v. Fraser Paper, Ltd.*, Me., 348 A.2d 260, 262 (1975).

As to the second aspect of the Commissioner's reasoning—hypothesizing, on the contrary to fact assumption that petitioner had not injured her back at work (and was only recovering from caesarean section surgery), when she should have been in good physical condition—again we are baffled by the Commissioner's approach. Since there was affirmative evidence, as abovementioned, that petitioner's fall caused her immediate back and leg pain as well as incapacity and there was an absence of evidence which would indicate a *first* manifestation of injury as well as work incapacity on or about May 1, 1976, we discern no sound basis for the Commissioner (1) to omit to deal with the evidence that petitioner had sustained incapacity, attributable to her fall, prior to the caesarean operation and (2) to find it necessary to indulge the contrary to fact hypothesis that petitioner's fall had not injured her and then estimate how long she would be incapacitated from work because of her caesarean section surgery. In this respect too, then, we must hold the Commissioner's analysis in need of supplementation by a more particularized consideration of the actual evidence and further findings of fact.

In sum, as to the issue of the date when petitioner's incapacity commenced, we must remand the case to the Commission for further consideration of the evidence and for additional findings of fact.

## 2.

■ Petitioner also claims that the finding of the Commissioner that petitioner's work incapacity terminated on August 15, 1976 was unsupported by competent evidence.

We reject this contention. The Commissioner expressly based his finding as to termination date on Dr. Booth's testimony that when he examined petitioner on August 16, 1976, her x-rays were entirely normal, her back pain had improved and her motion functions and reflexes were not impaired. Dr. Booth's diagnosis was that petitioner suffered from nerve root irritation from pressure on the sciatic nerve. Because petitioner had improved, Dr. Booth did not recommend any therapy but advised petitioner to maintain a low level of activity.

This testimony by Dr. Booth supported the Commissioner's finding that petitioner had not demonstrated any work incapacity after August 15, 1976.

## 3.

■ As a related point of appeal, petitioner asserts that the Commissioner precluded her from presenting any evidence of a continuation of total incapacity after August 15, 1976, in support of her claim that her physical capacity was so limited that she could not engage in any substantially remunerative employment with her skills and qualifications. See *Foster v. Bath Iron Works Corp.*, Me., 317 A.2d 11 (1974); *Overlock v. Eastern Fine Paper, Inc.*, Me., 314 A.2d 56 (1974); *Bolduc v. Pioneer Plastics Corp.*, Me., 302 A.2d 577 (1973).

The record fails to support petitioner's contention. It reveals that the Commissioner first sustained an objection to the form of a question asked by petitioner's counsel and then suggested the areas which might be appropriate for further inquiry. The Commissioner did not shut off petitioner from attempting to demonstrate work incapacity after August 15, 1976.

## 4.

Lastly, petitioner contends that there was no evidence in the record to support the

Commissioner's finding that "it was stipulated that Mrs. Brown's average weekly wage was $175.02."

As relevant to this question, petitioner first testified that her weekly pay was "somewhere in the area of $188.00 plus $15.00 a week for evening differential." The Commissioner then asked if petitioner had a wage schedule and petitioner commented that she was not positive of these figures. A "paper" was handed to the Commissioner and then to the petitioner's attorney, at which time the Commissioner asked: "If that's okay, that can be admitted." Petitioner's attorney then stated: ". . . alright, that's alright. It comes out close enough to what I think it is." When the Commissioner then summarized the situation, observing: "That's in by agreement then, I assume", petitioner's attorney responded: "Yes, fine." Without further comment petitioner's attorney directed the further questioning of petitioner to the nature and circumstances of her injury.

The employer Maine Medical Center contends that petitioner designated for inclusion in the record only the "transcript of Industrial Accident Commission hearing held February 10, 1977" and not the exhibits admitted at the hearing, and petitioner therefore should be precluded from arguing this issue on appeal.

We need not reach the issue. The record shows plainly that petitioner did stipulate to something in regard to her wage schedule or her average weekly wage. Since the case is being remanded to the Commission for new findings regarding the commencement date of petitioner's incapacity, the Commissioner and the parties will then have opportunity to resolve any problems concerning the contents of the stipulation.

The entry is:

Appeal sustained in part and denied in part.

Judgment set aside as to the determination that incapacity commenced on May 1, 1976.

Case remanded to the Workers' Compensation Commission[1] to reconsider the evidence, and to make new findings, regarding the commencement of incapacity as well as to clarify the matter of the contents of the stipulation concerning the average weekly wage of the petitioner.

Further ordered that the Appellee pay to Appellant an allowance of $550.00 for her counsel fees, plus her reasonable out-of-pocket expenses for this appeal.

DELAHANTY, J., did not sit.

---

1. The name of the Industrial Accident Commission was changed to Workers' Compensation Commission by P.L.1978, ch. 612.