James A. PARENT

v.

**GREAT NORTHERN PAPER COMPANY and Employers Fire Insurance Company.**

Supreme Judicial Court of Maine.

Argued March 5, 1980.

Decided Jan. 30, 1981.

Twitchell, Gray, Linscott & Badger, Stephen G. Shadallah (orally), Frederick J. Badger, Jr., Bangor, for plaintiff.

Mitchell, Ballou & Keith, John A. Woodcock, Jr. (orally), Bangor, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

NICHOLS, Justice.

The Petitioner, James A. Parent, appeals from a *pro forma* decree of the Superior Court, Penobscot County, affirming an April 27, 1979, decision of the Workers' Compensation Commission which "dismissed" his Petition for Award of Compensation.[1] The Commissioner found as a fact

1. The Commissioner's decree stated:

   Consideration of the testimony ... leads us to conclude that James Parent did not sustain the personal injury arising out of and in the course of his employment for Great Northern on April 17, 1977. [sic, 1978]. The Petition is hereby dismissed.

that the worker's injury was not caused by a work-related incident.[2]

The facts, in brief, are as follows: At the time of the incident in question, the worker, James A. Parent, was employed as a laborer at Great Northern Paper Co., in East Millinocket, Maine. On April 17, 1978, Parent felt an excruciating pain in his groin when he attempted to lift a 300–400 pound valve into a box on the roof of the plant. Afterward, he felt shaky and nauseous and reported immediately to the company physician, Dr. William L. Daniels.

Dr. Daniels' examination of Parent revealed swelling and tenderness around the left groin area. He diagnosed Parent's ailment as epididymitis, an inflammation of the cord and testicle. At a hearing before the Commission, Dr. Daniels testified that Parent's discomfort was not related to the lifting incident, but was caused by the inflammation; and, that when Parent lifted the valve, the infectious condition was painfully called to his attention, but that the condition was not caused by the lifting. Dr. Daniels referred Parent to his family doctor, Dr. Bourcard L. Nesin.

Thereafter, Dr. Nesin examined Parent four times between April 17 and June 16, 1978, during which time the worker complained of groin pain while walking, driving and lifting. He diagnosed "left groin strain" and recommended no treatment other than complete rest with no heavy lifting. At the hearing, Dr. Nesin could not recall

that Parent told him how his condition developed. Although his medical records indicated that the condition was "apparently acquired at work," he made no definite statement that the alleged lifting incident caused the groin strain. He testified only that "[a] lifting injury could cause a left groin strain, yes."

As his first point on appeal, the worker contends that the Commissioner failed in his duty to disclose in the findings of fact [3] the evidentiary basis for his decision, and that as such the findings of fact are reviewable here as conclusions of law, pursuant to 39 M.R.S.A. § 99.[4]

We disagree.

■    As we have previously noted:
Section 99 authorizes the Law Court to make independent factual evaluations from the record only in those cases where a commissioner has failed to do so and has founded his decision *solely* on the assertion that a petitioner has failed to sustain the burden of proof. (emphasis supplied).

*Guerrette v. Fraser Paper, Ltd.,* Me., 348 A.2d 260, 262 (1975). Contrary to the worker's contention, this is not such a case.

■    The primary and important function of § 99 findings is to make available to an appellate court a clear statement of the evidentiary basis for the Commission's decision.[5] *Boober v. Great Northern Paper Co.,*

2. On May 9, 1979, the worker filed a motion to find facts and conclusions of law, pursuant to 39 M.R.S.A. § 99. The Commissioner filed a responsive order on July 19, 1979, stating:
    We specifically find from the medical evidence that it is not established that it is more probable than not that the injury alleged in the Petition for Award which is the subject of a decree dated April 27, 1979, is causally related to the incident alleged in the petition.

3. *See* note 2 *supra.*

4. That statute provides in part:
    His [the Commissioner's] decision, in the absence of fraud, upon all questions of fact shall be final, but whenever in a decree the commission *expressly* rules that any party has or has not sustained the burden of proof cast upon him the said finding shall not be considered a finding of fact but shall be

deemed to be a conclusion of law and shall be reviewable as such. (emphasis supplied).

5. Findings of fact by the Commission serve the same purpose as findings by the court pursuant to M.R.Civ.P. 52(a). *See* R. Field, V. McKusick, and L. Wroth, *Maine Civil Practice,* § 52.1. (Supp.1977). The second paragraph of 39 M.R.S.A. § 99 was enacted by P.L.1977, ch. 632, sec. 2, effective July 6, 1978, to read in part:
    The Commissioner shall, upon the request of a party made as a motion within 10 days after notice of the decision, or may upon its own motion find the facts specially and state separately its conclusions of law thereon and file the appropriate decision if it differs from the decision filed *before the request was made.*
The language parallels M.R.Civ.P. 52(a). The provision was recommended by the 1977 Joint

Me., 398 A.2d 371, 373 (1979); *Overlock v. Eastern Fine Paper, Inc.*, Me., 314 A.2d 56, 57 (1974). The Commissioner's findings may be *in essence* a statement that the worker has not sustained his burden of proof. Nevertheless, this Court cannot treat such a conclusion as one of law where the Commissioner discloses the evidentiary basis for the conclusion. *Boober v. Great Northern Paper Co., supra; Guerrette v. Fraser Paper, Ltd., supra.* In the instant case, the Commissioner identified a specific dispositive fact, causal connection, which he found had not been proven. He expressly found that the medical evidence failed to establish the necessary causal connection. He quite properly did not recite all the medical evidence which was already part of the record. The worker does not suggest what more the Commissioner should, or could, have done to disclose the evidentiary basis for his decision.

■ As his second point on appeal, the worker urges that the evidence does not support the Commission's conclusion that his injury was not work-related. The issue of causal connection is one of fact. *Baker's Case*, 143 Me. 103, 107, 55 A.2d 780, 782 (1947). Here, the Commissioner's finding that the worker's condition was not shown to be causally related to the alleged lifting incident is final "in the absence of fraud." 39 M.R.S.A. § 99. There has been no allegation of fraud made here. Furthermore, the evidence supports the Commissioner's ruling.

This is not a case like *Bernier v. Coca-Cola Bottling Plants, Inc.*, Me., 250 A.2d 820 (1969), where the Commissioner disregarded uncontroverted medical evidence that the employment was causally connected to the worker's infirmity. On the contrary, in the case now before us, one medical expert testified that the worker's condition was completely unrelated to the employment. The second medical expert's testimony that a groin strain could be caused by lifting, al-though corroborative to some degree of the worker's allegation, did not compel a conclusion of causal connection between the incident and the worker's condition.

We conclude that the Commissioner properly weighed the evidence and justifiably found that the worker had not met his burden of proof.

■ It would have been more appropriate for the Commissioner to have ordered the *denial* rather than the *dismissal* of the petition for award of compensation. As we have heretofore pointed out, *dismissal* connotes disposition of the cause otherwise than on its merits, and often a petition so disposed of can be renewed. *Denial* of the petition, on the other hand, signifies an adjudication on the merits. *Tibbetts v. Tibbetts*, Me., 406 A.2d 78, 82 (1979). The error in nomenclature was, however, in this instance inconsequential.

The entry is:

Appeal denied.

Judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

McKUSICK, C. J., and GLASSMAN, J., concurring.

GODFREY, J., with whom ROBERTS, J., joins, concurring in separate opinion.

GODFREY, Justice, with whom ROBERTS, Justice, joins, concurring.

I concur in the result. If it were clear from the language of the commissioner's order that the commissioner thought the employee first suffered acute pain from his epididymitis as the result of the work-related incident but that his pain, even though disabling, was not an "injury" within the meaning of the compensation act, I would think the appeal should be sustained. In my view, pain alone can be disabling and

Select Committee on Workmen's Compensation, which stated in its Report that in making findings of fact, the Commission should "adhere to the civil rules of procedure that current-ly direct Maine judicial decisions." *Report of the Select Committee on Workmen's Compensation*, p. 6 (December 29, 1977).

the resulting disability should be compensable despite the absence of any lesion, muscle strain, or other objectively observable change of physical condition. I would reach that conclusion by applying our settled rule that when a work-related incident "lights up" or precipitates the disabling effects of disease theretofore quiescent, the resulting disability is compensable. *E. g., Goldthwaite v. Sheraton Restaurant,* 154 Me. 214, 218, 145 A.2d 362, 364 (1958); *Gagnon's Case,* 144 Me. 131, 65 A.2d 6 (1949); *Martriciano v. Profenno,* 127 Me. 549, 143 A. 270 (1928); *Mailman v. Record Foundry & Machine Co.,* 118 Me. 172, 106 A. 606 (1919).

However, I am constrained to concur in the result reached by the Court because, on the evidence of record, the commissioner could have found against causation on another ground: namely, that he did not believe there had been sufficient proof of any change whatever in the employee's condition attributable to the incident at work. If he believed, for example, that the onset of acute pain was purely coincidental with the lifting incident at work and that the underlying epididymitis was wholly uncaused by the employment, he was correct in finding no causal connection between the employment and the disability. Despite my doubts that such was the case, I agree that we should not go behind the findings the commissioner made in response to claimant's general motion to "find the facts."