George F. BROUGH

v.

BELL PIKE NORTHEAST and Employers Mutual Liability of Wisconsin.

Supreme Judicial Court of Maine.

Argued Jan. 5, 1982.

Decided Feb. 3, 1982.

---

**2.** At the time of Mrs. Page's application, the City of Auburn had not enacted a workfare program.

Richard E. Valentino, Saco (orally), for plaintiff.

Norman & Hanson, Stephen W. Moriarty (orally), Robert F. Hanson, Portland, for defendants.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

The employee, George Brough, appeals from a pro forma decree entered in Superior Court, Cumberland County, incorporating a decision by the Workers' Compensation Commission. The Commissioner had denied Brough's petition for award of compensation, concluding that the evidence presented was insufficient to sustain the employee's burden on the issue of causation. Brough challenges the decree on the grounds that there was no competent evidence to support the Commissioner's conclusion. We affirm the pro forma judgment below.

The evidence showed that Brough began work as a pipe fitter and welder with Bell Pike Northeast in July 1979. On September 17, 1979, while moving a 1000 pound I-beam with two other workers, he felt a rip in his lower back and experienced sharp pains in his right leg. He was examined at the Maine Medical Center and advised to return to work. Brough later consulted an orthopedist and a neurosurgeon whose reports indicate both that Brough had previously been diagnosed as having a minor abnormality of his low back and that he had

experienced pain in his low back and right leg several months earlier after moving a heavy piece of pipe. Both doctors theorized that nerve root compression was causing plaintiff's pain. Plaintiff elected to have surgery performed by Dr. Bidwell, the neurosurgeon. This procedure revealed a ruptured disc which Dr. Bidwell testified had caused the nerve root compression. Surgical repair of the disc greatly relieved plaintiff's pain.

An employee petitioning for award of compensation has the burden of showing by a preponderance of competent and probative evidence that a causal relationship existed between the work-related incident and the employee's disability. *Rowe v. Bath Iron Works Corp.*, Me., 428 A.2d 71, 73 (1981). The determination of causal connection is a question of fact. *Bruton v. City of Bath*, Me., 432 A.2d 390 (1981); *Rowe v. Bath Iron Works Corp.*, 428 A.2d at 73. Our review on this issue, therefore, is limited, and we must sustain the decree if the record contains competent evidence supporting the Commissioner's findings.[1] *Bruton v. City of Bath*, 432 A.2d at 392; *Mortimer v. Harry C. Crooker & Sons, Inc.*, Me., 423 A.2d 248, 250 (1980). This is the case even if the evidence would also have supported a different conclusion. *Bruton v. City of Bath*, 432 A.2d at 392; *Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512, 518 (1980).

In the present case, Dr. Bidwell testified in response to a hypothetical question that when symptoms arise in the manner in which Brough's did, "it appears to be a cause and effect thing *as far as symptoms go.*" (emphasis added) The record before the Commissioner, however, was devoid of evidence concerning the etiology of the em-

---

1. The employee relies on *Guerette v. Fraser Paper Ltd.*, Me., 348 A.2d 262 (1975) and asserts that a broader review is available because the Commissioner based his determination solely on the assertion that petitioner had failed to meet his burden. *Guerette* held, however, that the Law Court can only make independent factual evaluations in that situation if the Commissioner has failed to do so, which is not the

case here. Moreover, since *Guerette* was decided, 39 M.R.S.A. § 99 has been amended to require findings of fact by the Commissioner only upon request of a party. This amendment limits any factual review by the Law Court to a determination of whether the record discloses any reasonable basis to support the Commissioner's decision. *Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512, 516 (1980).

ployee's ruptured disc.[2] This lack of evidence coupled with the evidence showing that Brough had had back trouble predating the September 17th incident certainly provides a foundation for the Commissioner's negative finding on the issue of causation.

The employee has also assigned as legal error the Commissioner's conclusion that he could ascertain neither when the injury occurred nor by whom Brough was employed at the time it occurred. This conclusion is merely a different formulation of the finding on causation, however, and the configuration of evidence supporting that finding supports this negative conclusion as well.

The entry is:

Appeal denied.

Judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.

2. Counsel for the petitioner and the medical expert dealt exclusively with symptoms throughout the medical portion of the hearing:

Q I'll just repeat the last portion of that. Doctor, do you have an opinion as to whether or not a causal connection exists between *the symptoms* felt on 9/17/79 and the pushing activity being done at that time?

A Yes, I have an opinion.

Q What is that opinion?

A That apparently there was a causal connection between *those symptoms* and his activity at that time.

Q Now, Doctor, I'd like to ask you also whether or not there is a causal connection between *the symptoms* observed by you on November 13, 1979, and *the symptoms* expressed to you by Mr. Brough and the pushing of the beam as described in my hypothetical on 9/17/79?

. . . . .

A Number one, you never observe symptoms—symptoms are what the patient tells you, you can't observe them; I can't answer the question because I didn't see him previous to that event and do not know whether what I found objectively came on after the event or were there before. The patient would not have a way of telling me unless he were a good medical examiner.

Q Let me ask the question in a different fashion. Do you have an opinion, Doctor, as to whether or not there was a causal connection between *the symptoms* described by the patient to you on November 13, 1979, and the incident I have just described to you of pushing the I-beam?

A Yes, I believe I already testified there is an apparent connection.

Q I see. And what would that connection be, Doctor?

A Well, merely *the symptoms came on at the time of this activity; therefore, it appears to be a cause and effect thing as far as symptoms go.*

Q Doctor, if Mr. Brough had not had any symptoms, would you have performed surgery?

A No. (emphasis added)