**Weston BRYANT**

v.

**MASTERS MACHINE CO. and
Travelers Insurance Co.**

Supreme Judicial Court of Maine.

Argued March 3, 1982.

Decided April 13, 1982.

McTeague, Higbee & Tucker, Maurice A. Libner (orally), Brunswick, for plaintiff.

Norman & Hanson, Stephen W. Moriarty (orally), John M. Wallach, Portland, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

CARTER, Justice.

### I.

The employee appeals from a *pro forma* judgment of the Superior Court which affirmed a decision of the Workers' Compensation Commission denying the Petition for Award of Compensation.

The facts of the case are largely undisputed. Until August 14, 1979, the date assertedly commencing the period of total disability, the employee worked as a machinist for Masters Machine Co. On February 28, 1978, the employee was in the course of his employment activities operating a drill-press. He was sitting on a stool, described to be twenty-five or twenty-six inches in height, which another employee accidentally kicked out from under him. Because his knees were "frozen" due to a pre-existing condition, the employee was unable to break his fall, and he fell from the stool directly onto the floor. He testified that he immediately experienced pain in his lower back, and that he sought medical assistance at a local hospital the next day when he developed substantial pain in his right hip. Medication provided by his physician, Dr. Belnap, was ineffective in relieving the pain which persisted and occasionally intensified. The employee nonetheless returned to work three days after his fall. He testified that the pain forced him to lose a week of work in November 1978, and that it ultimately compelled him to leave his employment on August 14, 1979.[1]

Other testimony revealed the debilitating effects of the fall. The employee stated that he was able to work, climb stairs, lift heavy items, dance, swim, and drive pain-

---

1. During this period, other employees assisted the plaintiff in performing tasks which he was unable to do because of his condition.

lessly until the incident of February 28. After the fall, however, he was unable to stoop, dance, swim, or climb stairs. He also claims to have difficulty sleeping, and he now consumes forty aspirin a day. The sole issue presented develops from the employee's medical condition preceding his fall from the stool on February 28, 1978.[2]

By stipulation of the parties, the deposition of George Morton, a rheumatologist, was admitted in evidence before the Commissioner. Dr. Morton had examined the employee at the request of defendant-insurer. He diagnosed the employee as suffering from rheumatoid arthritis of the right hip, osteoarthritis at L4–5 and L5–S1, spondylolisthesis at L5–S1 ("a subluxation or partial dislocation of the fifth vertebra, fifth lumbar vertebra or the first sacral vertebra"), and spina bifida occulta at L5. The record shows that spina bifida occulta is a congenital disorder. The osteoarthritis is a condition which predated the February 1978 fall. The symptomatology of the osteoarthritic condition was stated to have been "caused" by the employee's fall from the stool. However, absent x-rays which would demonstrate the extent of this condition as it existed before February 1978, Dr. Morton was unable to determine whether the fall affected any underlying pathology.

Similarly, while spondylolisthesis can be caused by trauma, Dr. Morton was unable to identify a causal relation between that condition and the employee's accident because of the absence of records made before the accident. He also testified that, as with osteoarthritis, quiescent spondylolisthesis may become symptomatic upon trauma. In fact, Dr. Morton testified that if the employee had been affected with asymptomatic spondylolisthesis before February 1978, the accident might well have revealed symptomatic manifestations of the condition.

Finally, the medical report prepared by Dr. Thomas Martin, a specialist in orthopedic surgery, was admitted into evidence, in which Martin diagnosed the employee as suffering from noncongenital degenerative disc disease in L5–S1.

The Commissioner's decree made several pertinent findings.[3] He found that the employee is totally disabled. He found that "the employee did fall off a stoll [sic] at work under circumstances making that injury compensable as against Masters Machine." Presumably, this means that the injury arose out of and in the course of employment. See 39 M.R.S.A. § 51. The Commissioner then considered the employee's back condition and found that the os-

2. The employee was involved in two rather serious accidents in 1960 and 1961. The effects of these events led in part to his condition in February 1978.

3. The employee's Petition for Award of Compensation initially sought compensation for disability resulting from aggravation, as the result of the fall, of an arthritic condition of his hip. Medical testimony before the Commissioner indicated that prior to the fall at work the employee suffered from "[v]ery severe degenerative arthritis at his right hip." Dr. John Wickenden was of the opinion that the disease was too severe to have developed in the interim period between the date of the fall at work and August 9, 1979, the date of the doctor's first examination of the employee. He further testified that "some portion" of the employee's symptomatology arising from this condition was attributable to the fall but estimated that any additional pathology resulting from the fall would amount to only about 1%. Dr. Morton also noted that a new hip had been implanted in the employee in March 1980. As a result, the employee became able to sit and stand in

relative comfort. Morton thought that the correction of the arthritic hip condition removed some stress from the lower back, thereby reducing the pain.

The Commissioner found as a fact that no disability arose from any trauma sustained in the fall to the employee's right hip. He then went on to consider the compensability of the disability arising out of aggravation of the preexisting condition of the employee's back. On the basis of the fact-finding and principles of law indicated in the text, he found that disability not to be compensable. On appeal, the employee has made no attack on the Commissioner's handling of the claim for disability arising out of the condition of the employee's right hip. Therefore, no issue as to that claim is before us and we intimate no opinion on any aspect of that particular claim.

The claim for disability resulting from the effect of the fall at work upon the employee's back was placed before the Commissioner by an amendment to the original Petition.

teoarthritis, degenerative disc disease, spondylolisthesis,[4] and spina bifida occulta were asymptomatic prior to February 28, 1978. He found that the accident rendered these conditions symptomatic. The Commissioner then concluded that falling from the stool effected no change in the underlying pathology of the employee's back.[5] Construing *Hamm v. University of Maine,* Me., 423 A.2d 548 (1980) to hold that "the mere creation of pain and swelling is not sufficient for a work-related incident to be an injury within the meaning of the Act," he concluded "that the employee has failed in its burden of demonstrating that the incident in question resulted in an injury to the employee's lumbo-sacral spine." The petition was denied.

Pursuant to the employee's subsequent motion for findings of fact and conclusions of law, the Commissioner made clear that the employee's congenital and degenerative conditions were not caused by the fall, but that they were rendered symptomatic by it. The employee obtained a *pro forma* decree in a timely manner from which he now seasonably appeals.

We conclude that the Commissioner committed an error of law in construing *Hamm* to preclude, as a general proposition, the compensability of a disability resulting from "the mere creation of pain and swelling." He further erred in concluding on the basis of the application of that erroneous principle of law that the employee here had failed, on this record, to carry his bur-den of demonstrating that the fall from the stool resulted in an injury to the employee's lumbo-sacral spine which "arose out of" his employment.

## II.

■ The issue of causal connection between employment activity and disability is one of fact. *Bruton v. City of Bath,* Me., 432 A.2d 390, 392 (1981); *Rowe v. Bath Iron Works Corp.,* Me., 428 A.2d 71, 73 (1981); *Parent v. Great Northern Paper Co.,* Me., 424 A.2d 1099, 1101 (1981); *Baker's Case,* 143 Me. 103, 107, 55 A.2d 780, 782 (1947). The employee bears the burden, in proceedings on his Petition for Award of Compensation, of showing by a preponderance of competent and probative evidence that a causal relationship existed between the work-related incident and his disability. *Brough v. Bell Pike Northeast,* Me., 440 A.2d 365, 366 (1982); *Rowe,* 428 A.2d at 73 (1981).

■ It must be borne in mind that the original purpose of the Workers' Compensation Act was "to compensate employees for injuries suffered *while* and *because* they were at work." (Emphasis added.) *Canning v. State Department of Transportation,* Me., 347 A.2d 605, 608 (1975). From 1915 (P.L.1915, ch. 295) to October 3, 1973 (P.L.1973, ch. 389), the generality of that concept was limited in application by the statutory requirement that an injury, to be compensable, arise out of the employment "by accident."[6] For purposes of satisfying

4. The Commissioner characterized this as a congenital condition, but the testimony indicated otherwise. *See* text *supra* at 332. This appears, however, to have little effect on the analysis here, as the finding carries importance only to the extent that the condition antedated the accident.

5. He stated that there was no testimony on this point. This observation, however, is incorrect. Dr. Morton stated, as the Commissioner speculated, that the effect on the employee's pathology as to osteoarthritis and spondylolisthesis could not be determined.

6. The "by accident" requirement was removed from the first and second paragraphs of § 52 of the Act by P.L.1973, ch. 389 (effective October 3, 1973). That section provided for benefits consisting of reasonable medical aids and services and rehabilitation at the employer's expense for any work-related injury. The legislation made no change with respect to the "by accident" requirement in 39 M.R.S.A. § 51 which provides for payment of disability benefits for such injuries. This Court, nevertheless, held that the failure to make such a change in § 51 concurrently with that accomplished in § 52 was a legislative oversight and that the effect of P.L.1973, ch. 389 was to remove from the Act the "by accident" requirement for entitlement to disability benefits under § 51. *Canning v. State Department of Transportation,* Me., 347 A.2d 605 (1975). Section 51 was subsequently amended by the Legislature to remove the "by accident" language from it by P.L.1975, ch. 480 § 6 (effective October 1, 1975).

the requirement of "accidental" injury, this Court has held that a weakness in the bodily structure which is gradually worsened and ultimately breaks down as a result of the stress caused by usual work activity may be an injury by accident. *Bernier v. Coca-Cola Bottling Plants, Inc.*, Me., 250 A.2d 820 (1969); *but see Towle v. Department of Transportation*, Me., 318 A.2d 71 (1974). We have also held that if the stress of work activity activates a pre-existing infirmity, or aggravates the development of it so as to cause an internal breakdown of the affected part of the bodily structure, a personal injury by accident occurs. *Patrick v. J. B. Ham, Co.*, 119 Me. 510, 111 A. 912 (1921). These decisions are clearly consistent with the broad purpose of the Act to provide compensation for work-related disability. It was the Legislature's intent to sharpen and re-emphasize this original, general purpose of the Act by the elimination of the "by accident" requirement. *Canning*, 347 A.2d at 607–08.

It would be anomalous to construe the causation requirement of the Act, after the restrictive element of accidental injury has been eliminated, in its application to the so-called "aggravation" cases so as to make the overall impact of the amended causation requirement more stringent than it was in its original form, absent a clearly discernible legislative intent compelling such a construction.

■ It must, however, be borne constantly in mind that the purpose of the "arising out of" language, as used in the Act, is to establish a requirement of causation between the employee's work activity and his ultimate disability. *See Bruton v. City of Bath*, Me., 432 A.2d 390 (1981). Even after the legislative elimination of the accidental component of the causation requirement, it was not intended that compensation should issue for every disability resulting from an injury sustained *while* the employee was at work, but only for a disability as to which

the precipitating injury was additionally sustained *because* of the employee's work. *Canning*, 347 A.2d at 609.

■ In a series of cases dating back to 1919, this Court has followed what has become a well-settled rule of compensation law that when a work-related incident or exertion "lights up" or activates disabling effects of a pre-existing disease condition which was previously asymptomatic, the disability resulting from such activation of symptoms is compensable. *See, e.g., Wood v. Cives Construction Corp.*, Me., 438 A.2d 905, 910 (1981); *Goldthwaite v. Sheraton Restaurant*, 154 Me. 214, 218, 145 A.2d 362, 364 (1958); *Gagnon's Case*, 144 Me. 131, 132, 65 A.2d 6, 6 (1949); *Martriciano v. Profenno*, 127 Me. 549, 550, 143 A. 270, 271–72 (1928); *Mailman v. Record Foundry & Machine Co.*, 118 Me. 172, 180–83, 106 A. 606, 610–11 (1919). The criteria for analyzing the causation requirement in a case involving aggravation of a pre-existing condition were set out in synthesis over a decade ago in *Soucy v. Fraser Paper, Ltd.*, Me., 267 A.2d 919 (1970).[7] There, the employee had slipped while running to assist a fellow employee, had fallen and sustained pain in his shoulders, neck and the occipital area of the head. He continued to work with pain for a period of approximately two months, during which time his condition worsened. He ultimately left work due to the pain. He received compensation under an approved agreement. It was eventually concluded, as a matter of medical diagnosis, that he suffered from amyotrophic lateral sclerosis or "motor neuron disease." That condition was, as a matter of medical knowledge, of unknown etiology. On the employer's petition, it was contended that the employee's disability as of the date of the filing of the petition was due to the continuing effect of the underlying motor neuron disease and not to the symptomatology activated by the work-related fall. The Commissioner so found and terminated compensation.

7. That case arose out of the employer's petition for review of incapacity alleging that the disability for which the employee was receiving compensation under a prior, approved agreement for payment of compensation had diminished or ended. Thus, the employer there bore the burden of proof. *Soucy*, 267 A.2d at 921; *Baker's Case*, 143 Me. 103, 55 A.2d 780 (1947).

On appeal, we noted that because of the effect of the approved agreement, the employee's existing disability was to be treated as adjudicated to result from the work-related fall and therefore to be compensable until the employer demonstrated by a preponderance of the evidence "that the effect of the accident has ended." *Id.* at 921. We stated that the disability "would continue to be compensable:

(1) If the fall is the sole cause of the present incapacity.

(2) If the fall caused or precipitated the neurological disorder or if the neurological disorder existed before the fall and was aggravated by the fall. . . .

(3) If effects of the fall and of the neurological disorder combine to produce the incapacity. . . ."

*Id.* at 921–22. We said the employer's burden required it to negative all three of these propositions in order to achieve a termination of compensation. In the absence of any medical knowledge as to the physiological cause of motor neuron disease and with evidence in the record that the employee's symptoms could be the result of pre-existing cervical arthritis "lighted up" by the fall, we concluded that the evidence was insufficient to show a termination of the effects of the fall in producing the existing disability. *Soucy,* 267 A.2d at 922.

We applied these substantive principles of law in the context of the burden of proof requirements of an employee's petition for award in *Canning,* 347 A.2d 605. There, the Commissioner awarded total disability compensation, for the period of the employee's hospitalization, to an employee who was the victim of an angina attack while shoveling dirt in the course of his work-related duties. On appeal, the employee claimed that the Commissioner should have made a finding of *permanent* disability entitling him to continuing disability benefits after the hospitalization ceased. The employer claimed on appeal that the angina attack was not a compensable injury under the Act on the theory that the attack arose out of the employer's preexisting heart condition and was not caused by the work-related activity. We there stated that:

An employee is, of course, entitled to compensation for a disability proximately caused by his employment regardless of whether his condition at the time of injury was average or subnormal. Thus, a work injury that aggravates a pre-existing condition is compensable even though a physically normal employee would have been unaffected, *provided the injury occurs under conditions that would otherwise entitle the employee to compensation.*

347 A.2d at 609. (Emphasis added.) Citing *Soucy,* 267 A.2d 919, we said that the fact that "a pre-existing condition was in part responsible for the claimant's period of disability does not in itself render the injury noncompensable." *Canning,* 347 A.2d at 609. We there affirmed the award of compensation *for the limited period* set by the Commissioner. *See also McLaren v. Webber Hospital Ass'n,* Me., 386 A.2d 734 (1978).

■ These cases reiterate the previously established law that an employee is entitled to disability compensation for any period of disability that is shown to result from the combined effects of work-related activity and a pre-existing condition of the employee. *Canning,* 347 A.2d at 609; *Soucy,* 267 A.2d at 922. That entitlement exists, in appropriate circumstances, whether or not the employee's pre-existing condition is completely asymptomatic prior to the impact upon it of the work-related activity or incident, *Canning,* 347 A.2d at 609, at least for the period during which the impact and the condition combine to produce some disability. *Canning,* 347 A.2d at 609; *Soucy,* 267 A.2d at 921.

What those cases do not directly address is the content of the proper test of causation and the method of its application in cases where the disability for which compensation is sought results from the "combined effects" of a work-related risk and a "personal risk" of the employee created by a pre-existing condition (or susceptibility to disability) which is not work-related. Those cases and previous cases spoke only to the general issue, which was all that was before

the Court in those cases, of whether a disability caused by such combined effects was a compensable "injury" for purposes of the application of the "arising out of" language of the Act. We have not addressed the particular concept of causation, or its content, which is to be applied to distinguish those cases in which the "injury" is sustained by an employee only *while* at work but not *because* of his work activity, from those cases where the injury is sustained *both* while and because the employee is engaged in the work activity. In the former, the injury does not result in compensability while in the latter it does.

Some of our subsequent cases have turned on considerations of the content of the causation requirement, but they have been few in number and have not presented an occasion for the comprehensive articulation of the nature and content of the causation requirement in the so-called "combined effects" case. This case does present an occasion wherein such articulation is necessary to a reasoned decision of the issues before us as they are so nicely and deliberately postured by the Commissioner. The Commissioner's erroneous interpretation of our recent cases on the point, here manifested, provides further impetus to set out in greater detail the underlying concept of the causation requirement.

▆▆ That requirement is intended to result in the implementation of the general legislative intent under section 51 and section 52 of the Act that an employee who incurs a disability *while* and *because* he is at work receive compensation for it. *See Canning*, 347 A.2d at 608; *Bartley v. Couture*, 143 Me. 69, 55 A.2d 438 (1947). To serve that purpose, the requirement must be so shaped as to permit, in a "combined effects" case, a balanced consideration of the employee's pre-injury condition and the extent to which the injury *results from* a work activity. This can only be accomplished by the application of a standard

which recognizes the factual progression from the actual physical activity done in the course of work-related tasks to the medically determinable mechanism of disability resulting therefrom. But the standard must also involve a comparison of: (1) the extent to which the employee's condition, including pre-existing levels of disability, apart from the work-related activity, contributes to bringing about the resultant disability and (2) the extent to which the onset of disability is a function of the risks created by the requirements of the employment. As Professor Larson points out, the causation requirement is made up of two components. Professor Larson denominates these as "legal cause" and "medical cause" and separates them as follows: "Under the legal test the law must define what kind of exertion satisfies the test of 'arising out of the employment' ... [then] the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this ... [injury]." 1B Larson, *The Law of Workmen's Compensation*, § 38.83, at 7–235 (1980).[8] *Accord Newman Brothers, Inc. v. McDowell*, 354 So.2d 1138, 1140 (Ala.App.), *cert. denied sub nom. Ex parte Newman Brothers, Inc.*, 354 So.2d 1142 (1978); *Strickland v. National Gypsum Co.*, 348 So.2d 497, 499 (Ala.App., 1977); *Market Food Distributors, Inc. v. Levenson*, 383 So.2d 726, 727 (Fla.Dist.Ct.App.1980) (back injury case); *Sellens v. Allen Products Co., Inc.*, 206 Neb. 506, 508, 293 N.W.2d 415, 417 (1980); *Foley v. State Accident Insurance Fund*, 29 Or.App. 151, 155, 562 P.2d 593, 595 (1977); *Pitsch v. Department of Industry, Labor & Human Relations*, 47 Wis.2d 55, 60, 176 N.W.2d 390, 392 (1970).

▆▆ Absent the content provided by "legal cause," the causation requirement of the statute *would allow compensation for any disability that could be shown as a matter of medical or physical fact to have occurred because of the effect of ordinary*

---

8. Professor Larson derives his mode of analysis principally from various cases in which the injury is some type of heart attack. He notes, however, that there is "no reason" why the formula so derived cannot be successfully applied in other types of cases involving the combined effects of pre-existing conditions and work-related activity. 1B Larson, *supra*, § 38.-83, at 7–249.

activity upon a pre-existing condition during the course of employment. Such was clearly not the intent of the Legislature in using the "arising out of" language. It was intended that compensation should be available only where disability results from some sufficient causal relationship to the conditions under which the employee works. *See Canning*, 347 A.2d at 609; *Gooch's Case*, 128 Me. 86, 145 A.2d 737 (1929). This legal element of the causation requirement is the mechanism by which it becomes possible to distinguish between two types of disabilities: (1) that such happens to occur at work as a result of the employee's existent condition but without any enhancement of his susceptibility to its occurrence arising out of any conditions or requirements of the work activity or environment, and (2) that disability which occurs only because some condition of his employment increases the risk that he will sustain a disability above that level of risk which, because of his condition, he faces in his normal everyday life. Only by that mechanism can we distinguish the disability that is more likely than not produced, at least in part, by a risk related to the employment from one that is not produced in any way by such a risk. Thus, to meet the test of legal cause where the employee bears with him some "personal" element of risk because of a pre-existing condition, the employment must be shown to contribute some substantial element to increase the risk, thus offsetting the personal risk which the employee brings to the employment environment. *See McLaren v. Webber Hospital Association*, Me., 386 A.2d 734, 736 (1978); 3B Larson, *supra*, § 38.83,

at 7–236.[9] A comparison of contributing risks is required between that risk which arises out of the conditions of employment and that risk "present in the normal non-employment life of the workman or any other person." *Sellens*, 206 Neb. at 510, 293 N.W.2d at 418. With the test so framed, the comparison of the employment risk is made as against the non-employment risk defined by an objective standard. "Note that the comparison is not with *this employee's* usual exertion *in his employment* but with the exertions of normal *nonemployment* life of this or any other person." (Emphasis in original.) 1B Larson, *supra*, § 38.83, at 7–237. *See also Johns-Manville Products v. Industrial Commission*, 78 Ill.2d 171, 178, 399 N.E.2d 606, 610 (1979) (compensation denied where the risk of the employment activity "is no greater than that to which he would have been exposed had he not been so employed"); *Strickland*, 348 So.2d at 499 (employment risk must be ". . . *a danger or risk materially in excess of that to which people not so employed are exposed. . . .*" (emphasis in original)) quoting from *City of Tuscaloosa v. Howard*, 55 Ala. App. 701, 705–06, 318 So.2d 729, 732 (1975); *Newman Brothers, Inc.*, 354 So.2d at 1140. *But see Market Food Distributors, Inc.*, 383 So.2d at 727 (subjective test: "the employment must involve an exertion greater than that normally performed by *the employee* during *his* non-employment life." (Emphasis added)); *Foley*, 29 Or.App. at 155, 562 P.2d at 595.

In *Barrett v. Herbert Engineering, Inc.*, Me., 371 A.2d 633 (1977), we upheld the

---

**9.** See, *e.g., Brawn v. St. Regis Paper Co.*, Me., 430 A.2d 843 (1981). ". . . [T]he Commission cannot conclude that an occupational disease exists unless it finds that conditions of employment are at least one factor contributing causally to the development of the disease. Such causal contribution to the disease process is to be distinguished from a factual situation in which the conditions of employment merely aggravate, or worsen, the symptoms of a pre-existing disease." *Id.* at 845. The statutory definition applicable to that case specified that "*only* a disease which *is due to* causes and conditions *which are characteristic of and peculiar to a particular trade, occupation, process or employment* and which arises out of and in

the course of the employment. . .," 39 M.R.S.A. § 183, (emphasis added) qualified as an occupational disease. The requirement that the causes and conditions of the disease be peculiar to the trade, etc., was subsequently stricken from the statute. P.L.1975, ch. 480 § 11. Under that definition, the applicable concept of legal cause requires more than that the disease process be "lighted-up" by an employment risk; that is, that the *etiology* of the disease itself be precipitated by the conditions of employment. Hence, the distinction between a factual situation involving aggravation of a pre-existing disease condition and one showing direct causality.

denial of compensation to an employee who had a long history of chronic back-strain who sustained, while at work, the onset of back symptomatology while merely walking at a normal gait. We said there:

> It is true that the employer takes the employee as he finds him, but, even so, where the employee already suffers from a preexisting infirmity in dormant stage its activation or exacerbation from an asymptomatic condition to a symptomatic one during the course of the employment is not compensable under our Workers' Compensation Act unless the flare up arises out of the employment, meaning that it must be traced to the employment as a contributing proximate cause *and not be solely due to a hazard to which the workman would have been equally exposed to apart from the employment.*
>
> The statutory words 'arising out of' mean that there must be some causal connection between the conditions under which the employee worked and the injury which arose, or that the injury, in some proximate way, had its origin, its source, its cause in the employment.

371 A.2d at 636. (Emphasis added.) We said that the causation requirement in that case was not satisfied because the symptoms did not "spring into activity by reason of any work that he was doing.. : ." *Id.* This recognized the absence of any evidence to satisfy the element of "legal cause." No particular activity of the employment increased the employee's exposure to disability beyond the risk encountered by everyday life. There, the activity (*e.g.,* walking) did produce, as a matter of medical fact, the onset of symptoms. However, the disability occasioned by that activity was not one that came into being because of any work-related enhancement of the employee's "personal risk."

In *McLaren,* 386 A.2d 734, the employee sustained a disabling acute schizophrenic episode during the course of a week-long sensitivity group training seminar for executive development. Medical opinion testimony in that case indicated that the "special stress of the group sensitivity session" in combination with a pre-existing disposi-

tion or susceptibility to schizophrenia was the precipitating event of the employee's disabling psychiatric condition. *Id.* at 735. The Commissioner awarded compensation for a disability period of about five months duration. Adverting to the "personal risk" to which the employee was exposed because of his pre-existing susceptibility to schizophrenia, *id.* at 736, we found that, nevertheless, "the medical testimony justified the Commissioner's finding that the emotionally tense atmosphere and the special type of stress involved in the group sensitivity session was a precipitating factor proximately causing [employee's] injury...." *Id.* That finding satisfied both the requirement of "medical cause" and of "legal cause." It satisfied the former because it established that the disability was precipitated, as a matter of fact, by the stress of the sensitivity session. It satisfied the latter because the evidence justified the conclusion by the Commissioner that the employee was exposed to the risk of that stress because of attendance at the sensitivity session. Since such attendance was required by his employment, it represented an employment-related risk additional to the "personal risk" of disability represented by the employee's pre-existing condition.

A similar analysis to that used in *Barrett* and *McLaren* was employed in *Parent v. Great Northern Paper Co.,* Me., 424 A.2d 1099 (1981). Its application to the facts of that case produced a different result for a different analytical reason. In that case, the employee sustained pain in his groin on attempting to lift a very heavy valve. The medical evidence before the Commissioner disclosed a diagnosis of epididymitis, an inflammation of the testicle cord and testicle. It further appeared that the condition pre-existed the lifting, which simply brought the condition to the employee's attention. *Id.* at 1100. The lifting incident did not cause the condition. *Id.*

We there concluded that the Commissioner was justified, on the evidence, in concluding that the disability resulted solely from the condition and not from the lifting activity. The *Parent* case thus represents an

application of the "medical cause" requirement. There, as opposed to the situations in *Barrett* and *McLaren*, there was an absence of proof that the inflammation resulted in pain, in a medical-factual sense, because of any effect of the work-related, lifting activity. Hence, the work activity was not shown to be a sufficient *medical* cause of the symptomatology resulting in an increased level of disability.

### III.

The cases in *Hamm v. University of Maine*, Me., 423 A.2d 548 (1980) and *Parlin v. G. H. Bass & Co.*, Me., 423 A.2d 948 (1980) do not represent any modification of, or retreat from, that now well-established general proposition of law set out in *Soucy* and *Canning*. Rather, they represent the resolution of problems adjunct to its application. We have previously recognized that "[t]he existence of a pre-existing condition or weakness, or a 'personal risk' (*see* 1A Larson, *The Law of Workman's Compensation*, § 38.83), does not change the basic rules as to proximate causation; rather it only makes application of those rules a somewhat more complex task." *McLaren*, 386 A.2d at 736. The *Hamm* and *Parlin* cases likewise do not represent a change of any of the "basic rules" of causation but only illustrate the application of those rules within the confines of the complex factual structure of the "combined effects" case.

In *Hamm*, the work activity prompting the "flare up" of symptoms from the employee's underlying non-work-related condition necessarily took place in the period from late September 1977 to November 4, 1977 when she stopped work. She returned to work nearly two years later as a telephone operator for a different employer, the Maine Air National Guard, on November 1, 1979. Two months after that, she left the new employment because of pain allegedly experienced as a result of the activity required of her *in the new employment*. She then sought compensation from

the prior employer (University of Maine) on the factual premise that the work activity occurring between late September and November 4 of 1977 activated the symptoms of the underlying condition and disabled her after November 4, 1977. The Commissioner so found, awarding compensation for total disability from November 5, 1977 to May 1, 1978 and at 50% disability from May 2, 1978 to the date of the decree.[10] *Hamm*, 423 A.2d at 550.

On appeal, the employer contended that the award was improper because there was no evidence to show that any disability Mrs. Hamm suffered after *November 4, 1977*, resulted from the combined effects of her condition and the work activity required of her between late September and November 4, 1977; in short, her disability after November 4, 1977 was *solely* the result of her condition pre-existing that period of employment, unaffected by any work activity. We concluded that the evidence did not support any Commission finding of a disability continuing after that date as arising out of the combined effects of the pre-existing condition and the work activity. We said that to establish a compensable disability in that period it had to be shown that "the physical condition that impairs [Mrs. Hamm's] earning capacity must have been caused or at least made worse by the performance of the job at the University." *Hamm*, at 550.

We there recognized the absence of "legal cause." We found the record to support only the conclusion that the underlying condition was the result of her pre-employment injuries and the surgery necessitated by them. The record there showed that her work activity in the course of her job at the University, chopping salad, produced exactly the same symptomatological results as did her everyday, non-work-related, domestic activities. Thus, while there was no question but that the work activity generated, as a matter of medical fact, the onset of her symptoms (thus satisfying "medical cause")

10. The Commissioner excluded from the period of compensability the approximately two-month period during which the employee was

actually employed as a telephone operator for the Maine Air National Guard.

it did not occur because of any increased risk peculiar to her work. She sustained symptoms from any similar activity as a risk of everyday non-employment life. Thus, the disability did not "arise out of" her employment.

■ We did not focus on the fact that her disability arose from the onset of "pain and swelling" except to show that the element of "medical cause" was satisfied (*e.g.*, that as a medical fact the chopping of salad produced or contributed to producing her symptoms and the resulting disability). The decision turned on the conclusion that "legal cause" was not present (*e.g.*, that the performance of that activity as part of her employment did not increase the risk of the occurrence of disability beyond the risk of her everyday activity). This is a far cry from any pronouncement, as found by the Commissioner in this case, that "pain and swelling may not constitute a compensable injury." [11] The holding in that case is simply a recognition that ". . . if the deterioration [of the employee's condition] is merely a resumption of the progression of the con-

dition predating the industrial injury, further damage is not compensable." 1B Larson, *supra*, § 38.83, at 7–261–62. *See Greene v. Yeager*, 222 Md. 441, 160 A.2d 605 (1960).

In *Parlin v. G. H. Bass & Co.*, Me., 423 A.2d 948 (1980), we dealt with the application of the causation requirement in a somewhat similar factual situation. There, the employee had sustained an injury to her wrist in 1976 while working for a prior employer (Bennett), for which she received compensation for the resulting period of disability. She then returned to work in January 1978 after the performance of surgical procedures and a period of convalescence, not for the prior employer, but for G. H. Bass & Co. She worked at Bass until March 6, 1978, when she discontinued employment due to pain in her wrist. She sought further compensation from the prior employer and a new award of compensation from Bass. The only issue decided by the Law Court in *Parlin* was that of the employee's entitlement to an award of compensation against Bass.[12]

---

11. The Commissioner here found that the employee's fall effected "no change in the underlying pathology of the employee's back." *See supra* at 333. To the extent that he attached any dispositive significance to this finding in evaluating the sufficiency of the evidence here to meet the causal requirement of § 51, he committed further error. This is pointed up by three observations. First, there is no mention in the opinion in either *Hamm*, 423 A.2d 548 or *Parlin*, 423 A.2d 948, of a requirement of "a change in pathology." In *Hamm*, the reference is to "underlying physical *disability*." (Emphasis added.) *Hamm*, 423 A.2d at 550. In *Parlin*, the only references are to "her *disability*," *Parlin*, 423 A.2d at 950, "Mrs. Parlin's latest *disability*", "the *incapacity* at issue", "her underlying *disability*", "the disabling *symptoms of* that *condition*" and "plaintiff's ultimate disability." (Emphasis added.) *Id.* at 951. To the extent the Commissioner extracts from such references a controlling requirement for compensability of a change in the pathology of the employee's underlying condition, he is in error. Second, pathological change can only be relevant to the element of "medical cause." It is, or may be, at best, evidence tending to show that the work-related activity contributed, as a matter of medical or physical fact, to the production of pain-related disability. It can serve no role in the determination of "legal cause" as that relates to evaluation of possible expansion

of the risk of disability by work-related activity or conditions of the employment. Third, as is demonstrated in Part IV of this opinion, *infra*, this case does not involve any question of the sufficiency of proof of the element of "medical cause." Rather, it turns on the question of the existence of "legal cause" as to which a determination of the occurrence of change in the pathology of the employee's underlying condition *is not a controlling factor. A work-related* activity or condition that increases the employee's risk of disability may or may not result in such a pathological change.

12. Because of a procedural irregularity, the employee was not permitted, on appeal, to challenge that part of the Commission decree that found no causal relation between the employment at Bennett and her disability. The employee's claim against each employer was commenced before the Commission by the appropriate petition and the cases, though not consolidated, were heard together by the Commissioner. The ultimate result of the proceedings before the Commission was entry of a decree which required Bass to pay compensation, "but did not make any express disposition of Mrs. Parlin's petition seeking further compensation from Bennett." *Parlin*, 423 A.2d at 950. Both Bass and Parlin obtained *pro forma* decrees tracking that part of the Commission decrees

The medical evidence established unequivocally that Mrs. Parlin had been left, as a result of the prior work incident (and the surgery resulting therefrom), with a continuing condition of her hand and wrist diagnosed as "chronic recurring tenosynovitis of the de Quervain's type." *Parlin*, 423 A.2d at 951. The medical testimony also established that *any* recurring repetitive motion of the wrist would cause the onset of symptoms consisting of pain. In fact, the wrist "continued to bother her during the period between her Bennett [the prior employer] and Bass jobs." *Id.* On that record, we found unsupported by any evidence the Commissioner's finding that Mrs. Parlin's work activities for Bass "caused or aggravated" her de Quervain's Disease. *Id.* We said, "All competent evidence shows that the Bass job only stirred up symptoms of a *chronic* condition that already existed and did not make her underlying *disability* any greater." *Id.* (Emphasis added.) There was therefore no showing that her disability resulted from a risk that was generated by the circumstances of her employment. The thrust of that language was that her disability (the event on which entitlement to compensation is based) pre-existed her employment at Bass. The existence of a chronic condition would, and did in fact, result in the occurrence of symptoms on any type of repetitive motion of the wrist. "Medical cause" was thereby satisfied. We stated, quoting from *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365, 370 (1975) that, "[a]ll the medical testimony received by the commissioner, 'supported . . . the absence of *any intervening causative effect even in a slight degree* between the subsequent incidents at Bass and the plaintiff's ultimate disability.' " 423 A.2d at 951. (Emphasis added.) There was no "intervening causative effect" of the employment because the performance of her work-related activity did not increase the level of the everyday non-employment risk.

 We have only recently said that proof that routine work activity causes activation of symptoms consisting of disabling pain is not sufficient to carry the employee's burden on a petition for award where a pre-existing level of disability exists independently of any work-related activity or event. *See Brough v. Bell Pike Northeast,* Me., 440 A.2d 365 (1982). The employee must establish by a preponderance of the evidence in addition to "medical cause" that the effect of the symptomatology is to increase the pre-existing level of disability and that the onset of symptoms results from a work-related condition that expands the risk of normal, non-employment life. *Sellens,* 206 Neb. 506, 293 N.W.2d 415; *Newman Brothers, Inc.,* 354 So.2d 1138; *see Axelsen v. S. D. Warren, Division of Scott Paper Co.,* Me., 423 A.2d 546, 548 (1980). Conversely, where disability results from the combined effects of the prior condition and a work-related activity or event, and entitlement to compensation is established by decree or approved agreement, that entitlement may not be found to end, absent a showing by a preponderance of the evidence that the effects of the work-related event or activity have totally ceased as contributing factors to any continuing level of disability. *Soucy,* 267 A.2d 919. In such cases, the employer is liable only for disability to which the work-related incident or activity contributes,[13] and only when the contribu-

requiring Bass to pay compensation. Thus, in appealing from the *pro forma* decree, Mrs. Parlin was able, on appeal, ". . . to assert only her objection to the limitations of time and amount that the Commission placed upon Bass's obligation to pay compensation to her." *Id.* She was not permitted to challenge the finding of lack of causal connection between her disability and the Bennett employment. *Id.*

**13.** We advert to a further issue which the Commissioner may confront on remand. Under the present law of Maine, where in a "combined

effects" case total disability results, the employer is liable for compensation for total disability ". . . irrespective of whether the incapacity may have been due in part to the prior condition." *Gagnon's Case,* 144 Me. 131, 134, 65 A.2d 6, 8 (1949). Thus, in a total disability case where the total disability is produced by the combined effects of the pre-existing condition and the work-related activity or event, the employer is liable for compensation for the total resulting disability, not for just that portion of the disability that may be attributable to the effect of the work-related activity or event.

ting effects of that incident or activity wear off does that liability end. *See Wood v. Cives Construction Corp.*, Me., 438 A.2d 905, 910 (1981). The employee has the burden on a petition for award in such a case, "of proving that his *present symptomatic impaired condition*, if any, was caused or at least made worse by reason of the . . . work-related incident and was not merely the result of his pre-existing . . . disease condition." *Id.* (emphasis added); *see Stadler v. Nativity Lutheran Church*, Me., 438 A.2d 898, 900 (1981); *Bruton v. City of Bath*, Me., 432 A.2d 390, 393 (1981).

 Any symptom, pain or otherwise, which arises out of an increased risk of the employment because of its relation to an incident or activity in the course of employment and results in an increased level of disability by activation of a previously quiescent disease condition, creates a compensable disability whatever may be the specific nature of the symptoms. The Commissioner here erred in putting the focus of the inquiry on the nature of the symptoms (*i.e.*, pain and swelling) producing the dis-

ability. He ignored the truly operative fact: whether some risk-enhancing incident or activity that was *work-related* combined with the effects of the condition of the employee's back to produce an increase in the level of disability.[14] If it did, the employee is entitled to compensation. The exact mechanics by which the incident or activity produces the increase in disability (that is, whether by production of pain, restriction of motion or swelling) is not controlling. The operative fact is the existence of a causative connection between the work-related incident or activity and an increase in the pre-existing level of disability that meets the tests of both medical and legal causation.

## IV.

 In the present case, on the basis of the Commissioner's very explicit findings, it is clear that this Petitioner is entitled to compensation for disability resulting from an injury arising out of his employment. He specifically found that the condition of the employee's lumbar spine was asympto-

---

The work-related activity or event may qualify the resulting disability under the Second Injury Fund section of the Act as a "second injury". *Id.*, 65 A.2d at 8. In *Gagnon*, the "injury" did not so qualify under the pertinent section of the Act as it then read, R.S., 1944, Chap. 26, Sec. 14. Title 39 M.R.S.A. § 57 currently reads:

If an employee who had a permanent impairment from any cause or origin which is, or is likely to be, a hinderance of obstacle to his employment, sustains a personal injury arising out of and in the course of employment which, in combination with the earlier pre-existing impairment results in a total permanent incapacity, the employer or his insurance carrier is liable for all compensation provided by this section. The employer or insurance carrier shall be reimbursed from the Second Injury Fund for compensation payments not attributable to the second injury.

P.L.1981, ch. 474, § 1. On remand, it may be necessary for the Commissioner to consider the application of this statutory language to the facts of this case. We intimate no opinion on any issue that may be raised in such an eventuality.

14. That error might have been avoided by a careful reading of the opinion in the recent case of *Axelsen v. S. D. Warren, Div. of Scott Paper Co.*, Me., 423 A.2d 546 (1981) which is the case

immediately preceding *Hamm*, 423 A.2d 548, in the Maine Reporter. The appropriate analysis is there set forth with crystal clarity. We first set out the Commissioner's finding:

We interpret this language of the Commission to signify that the Commission decided the worker had failed to meet the ultimate burden of proof resting on him to show that it was more probable than not that special work-related conditions, rather than the worker's routine use of the foot as occurring whether or not the worker was engaged in performing his job, had caused the incapacity at issue.

*Axelsen*, 423 A.2d at 548. The analysis follows:

Dr. Labelle stated that the worker's now existing condition resulted from the passage of time in combination with the original injury and that, further, it could not be said that the heavy work shoes had causal relation to the present condition of the worker's left foot. Expert evidence is thus lacking to show that it was more probable than not that *work-related* circumstances, newly arising, had causally contributed to the workers' incapacity here at issue.

*Id.* (Emphasis in original.) A clearer, cleaner application of the requirement of "legal cause" would be difficult to imagine.

matic prior to the time that he fell from the stool at work. He further found that a combination of the effects of the fall and the pre-existing condition of arthritis of the cervical spine produced pain and that the effect of that pain was to disable the employee. Thus, the requirements of "medical cause" are met here.

The controlling question in this case is whether the event precipitating the onset of his symptoms (*e.g.*, the fall from the stool) meets the requirements of "legal cause" in that it results from a risk attributable to the work activity of the employee. A traumatic event resulting from the employee's work activity clearly does meet that requirement. The Commissioner properly so found on the facts of this case. The employee was sitting on a stool in the presence of other employees moving around in his work environment in order to do his work. Thus, his risk of sustaining a fall under those circumstances was increased by the conditions of his work environment above those that existed in a normal, non-employment day. It is sufficient to establish causality that it was proven that the fall was the product of a work-related risk and that the end result of the materialization of that risk was the production of pain which disabled him. His entitlement to compensation is not defeated either because it was pain which produced his disability or that the disability arose out of the "combined effects" of his fall and the pre-existing condition of his back.

The entry will be:

The *pro forma* decree of the Superior Court is reversed and the case is remanded to the Workers' Compensation Commission for further proceedings consistent with this opinion.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.