Sandra A. WESCOTT

v.

S. D. WARREN DIVISION OF SCOTT PAPER COMPANY.

Supreme Judicial Court of Maine.

Argued March 9, 1982.

Decided July 7, 1982.

---

McTeague, Higbee & Libner, Patrick N. McTeague (orally), Brunswick, for plaintiff.

Richardson, Tyler & Troubh, David O'Brien (orally), Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and WATHEN, JJ., and DUFRESNE, A. R. J.

GODFREY, Justice.

The employer appeals from the pro forma judgment of the Superior Court, Cumberland County, affirming an award of compensation to the complainant, widow of employee Norris Wescott, by the Workers' Compensation Commission. The employee was shown to have had non-symptomatic degenerative coronary atherosclerosis. The employer contends that the evidence of record does not support the Commissioner's finding that the employee's work activity caused his fatal myocardial infarction. The employer argues that the Commissioner erred in finding that the infarction arose out of Wescott's employment without evidence that Wescott's job-related activity was more strenuous than his activity in his own everyday life. We affirm the judgment.

Norris Wescott reported for work at S. D. Warren on January 24, 1978, at 11:30 p. m., after a four-day break. He and another employee loaded and operated a paper-coating machine until 7:30 a. m. on January 25. During that time they loaded the machine twelve times with rolls of paper, each about six and a half feet long and forty inches in diameter and weighing between 2,500 and 2,800 pounds. Loading required pushing and rolling the rolls about six feet on a concrete floor, in which there was a slight depression, to a "levelator" that raised each roll to the proper position on the machine.

Wescott's co-worker noticed after about two hours at work that Wescott appeared tired. Another employee noticed that night that Wescott was flushed and perspiring. As he was leaving work, Wescott complained to two other employees about pain in his shoulder and gas pains. He went home, ate a full breakfast, and then collapsed. He was pronounced dead at 8:45 a. m.

Wescott had no history of heart disease. He was forty-one years old, smoked up to two packs of cigarettes a day and drank ten to fifteen cups of coffee a day. Doctors for both the widow claimant and the employer were of the opinion that Wescott had coronary atherosclerosis, undetected until this episode.

The Commissioner found that Wescott's activity on the night and morning before his death included "fairly strenuous" work during the brief periods when he was pushing or rolling the rolls of paper. The Commissioner found also that Wescott's work activity in those periods "precipitated and accelerated the onset of his myocardial infarction. Thus . . . the employee's work activity was a factor in the employee's heart attack, which caused his death."

There is competent evidence in the record tending to support the Commissioner's conclusion that Wescott's work activity was "fairly strenuous" during the brief periods of loading the paper rolls on the coating machine. Wescott's co-worker at the machine testified in detail about the nature of the work. From that testimony the Commissioner could have reasonably decided that the rolling of the massive rolls to the levelator required strenuous exertion even though that activity occupied only a small fraction of Wescott's time on the job and even though the job was not otherwise physically demanding on the night in question. The Commissioner's finding that Wescott's job required periods of physically strenuous activity is binding on this Court as a finding of fact supported by competent evidence. *Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512 (1980).

■ The physicians presented by the parties as witnesses differed on whether Wescott's myocardial infarction was precipitated by the strain of moving the rolls in the course of his work activity. The employer's doctor testified that no such causal connection could be established as a matter of medical science; the claimant's doctor testified to the contrary. It was within the Commissioner's province to weigh the testimony. A finding that an employee's work activity is a precipitating medical cause of his injury is a finding of fact. *Bruton v. City of Bath*, Me., 432 A.2d 390, 392 (1981). *See Russell v. Camden Community Hospital*, Me., 359 A.2d 607, 612 (1976). If competent evidence in the record supports the finding, it must be upheld on appeal even if other evidence could rationally support a

contrary conclusion. *Dunton*, 423 A.2d at 518.

■ We have recently set forth in detail the methodology for analyzing the causation requirement in workers' compensation cases involving aggravation or "lighting up" of a pre-existing condition of disease that has been theretofore asymptomatic. *Bryant v. Masters Machine Co.*, Me., 444 A.2d 329 (1982). As we stated in that opinion, the causation requirement of sections 51 and 52 of the Workers' Compensation Act in a "combined-effects" case must be met by considering and comparing (1) the extent to which the employee's diseased condition, apart from the work-related activity, contributed to bringing about the resultant disability, and (2) the extent to which the onset of disability is a function of enhanced risks created by the requirements of the employment. *Id.* at 336. In the instant case the critical questions are two: (1) whether the extra exertion by the employee in pushing the rolls of paper increased the risk of a myocardial infarction over and above the level of the normal non-employment risk, and (2) whether the infarction was in fact precipitated by the exertion involved in the moving of the rolls. *See Bryant v. Masters Machine Co.*, 444 A.2d at 341, 343. Contrary to the employer's argument on this appeal, the first of these questions is not addressed by a comparison of the risk created by the injured employee's work activity with the risk created by *that particular employee's* habitual activities in a normal, non-employment day. The standard to be applied is more objective: whether the employment-related risk is substantially in excess of that to which people not so employed are exposed on a normal, non-employment day. *Bryant*, 444 A.2d at 337.

■ When the Commissioner framed his decree in this case, he did not have the guidance of our opinion in *Bryant*, with the result that the decree is not organized to address explicitly and sharply the issues we there held to be critical for reaching sound results in combined-effects cases. However, the necessary findings and conclusions

are sufficiently limned out in the decree to make it clear that the Commissioner recognized that where the employee had a pre-existing coronary atherosclerotic condition, the work activity preceding the myocardial infarction had to contribute some substantial element to increase the risk of injury or death in order to offset the personal risk that Wescott brought to the employment environment. *See Bryant*, 444 A.2d at 337, 341, 343. By finding both that the pushing of the rolls was physically strenuous and that the activity precipitated the onset of the infarction, the Commissioner must be understood to have found (1) that pushing the heavy paper rolls was an element of Wescott's work that generated some substantial risk of injury to the heart over and above the level of the normal everyday non-employment risk (*Bryant*, 444 A.2d at 341), and (2) that the exertion of pushing the rolls was the precipitating medical cause of Wescott's myocardial infarction and death. *See Russell v. Camden Community Hospital*, 359 A.2d at 612. Those findings, being supported by competent evidence, suffice to support the Commissioner's ultimate conclusion that the death was legally caused by, and hence arose out of, Wescott's employment. That conclusion, supported by competent evidence and the reasonable inferences that may be drawn therefrom, is final. The requisite standard of proof made explicit by *Bryant* was met in this case.

After the Commissioner issued his initial decree awarding compensation, the claimant asked the Commissioner to find that the presumptions afforded by 39 M.R.S.A. § 64–A (1978) were applicable.[1] In his decree making further findings of fact, the Commissioner acceded to the request, saying, among other things:

> Having reviewed all of the evidence again, and in view of that evidence to-

gether with the presumption created by Section 64–A of the Act, I find as a fact that the employee's work activity at Scott Paper Company on the evening in question accelerated and precipitated the onset of the employee's myocardial infarction . . . .

The employer contends that the Commissioner erred in treating as applicable the provisions of section 64–A.

On the facts of this case we need not address the employer's contention, and we therefore intimate no opinion on the issue sought to be raised thereby. It is clear from the Commissioner's language quoted above and from other language in the decree that the Commissioner did not rely on section 64–A as the basis for his conclusion that Wescott's myocardial infarction arose out of (*i.e.*, was caused by) his employment. His reference to the presumption, whether or not appropriate, did not harm the employer by affecting the result.

The entry is:

Judgment affirmed.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.

---

1. 39 M.R.S.A. § 64–A provides:

    In any claim for compensation, where the employee has been killed, or is physically or mentally unable to testify, there shall be a rebuttable presumption that the employee received a personal injury arising out of and in the course of his employment, that sufficient notice of the injury has been given, and that the injury or death was not occasioned by the willful intention of the employee to injure or kill himself or another.