2005 ME 125

**Michael CELENTANO**

v.

**DEPARTMENT OF CORRECTIONS.**

Supreme Judicial Court of Maine.

Argued: Oct. 20, 2005.
Decided: Dec. 22, 2005.

Laura Lee Klein, Esq. (orally), Peter B. Dublin, Esq., Worker Advocate Division, Bangor, for employee.

G. Steven Rowe, Attorney General, Stephen J. Sucy, Asst. Atty. Gen. (orally), Matthew Pollack, Asst. Atty. Gen., Augusta, for defendant.

James J. MacAdam, Esq., Anna Priluck, Esq., Nathan Jury, Esq., MacAdam Law Offices, Portland, for amicus curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] The State of Maine Department of Corrections appeals from a decision of a hearing officer of the Workers' Compensation Board (*Elwin, HO*) awarding benefits to Michael Celentano. Celentano, who had an asymptomatic back condition, was injured when he tripped over a table leg at his job at the Maine State Prison. The Department of Corrections contends that the hearing officer erred in failing to apply the legal causation standard from *Bryant v. Masters Machine Co.*, 444 A.2d 329 (Me.1982). The Department further argues that the hearing officer failed to apply 39–A M.R.S.A. § 201(4) (2001), which concerns work injuries that aggravate, accelerate, or combine with preexisting physical conditions. We affirm the decision.

## I. BACKGROUND

[¶ 2] Celentano, who is forty-three years old, previously worked as a police officer in Connecticut and was injured at work in 1992 when he slipped on ice. That injury caused back pain and left leg symptoms. He was diagnosed with severe spinal disease with herniated discs. His last treatment for the 1992 injury was in 1993. The hearing officer found that Celentano had recovered completely from the 1992 injury, and Celentano testified that he was pain-free when he moved to Maine in 1993.

[¶ 3] Celentano began working for the Maine State Prison as a corrections officer in 1996 and was employed in that capacity at the time of his 2001 injury. In August

2001, while attending a mandatory training session for his job, he caught his right leg on a table leg as he stood up from the table. While attempting not to fall, he twisted his right leg and felt immediate pain. Another corrections officer also caught his foot on the table leg but did not fall.

[¶ 4] Before the 2001 injury, Celentano had been able to perform all of his work duties including walking up and down stairs to patrol the cell blocks and re-straining inmates as needed, but after the injury he was not able to perform many of these duties. He was reassigned to light duty work. He was unable to participate in sports activities that he had regularly engaged in between 1992 and 2001, includ-ing bowling, volleyball, and softball.

[¶ 5] The hearing officer considered the medical opinions of three doctors, all of whom agreed that Celentano had a signifi-cant preexisting back condition. Two of the doctors opined that the 2001 incident was not enough to have resulted in any anatomic change in the preexisting back condition. The third doctor, however, whose opinion the hearing officer found more persuasive, stated that "even though it seems like it was a relatively trivial incident, that was enough to tip the scales to cause Mr. Celentano to have significant nerve root compression."

[¶ 6] The hearing officer found that the 2001 injury arose out of the employment and that the injury "contributed to [Celen-tano's] disability in a significant manner."

## II. DISCUSSION

[¶ 7] The hearing officer's factual findings are final, 39–A M.R.S.A § 318 (2001), and not subject to appeal, M.R.App. P. 23(b)(3). In this case, the Department contends that the decision is the product of a misapplication or nonapplication of statu-tory and case law. We will not overturn a decision of a Workers' Compensation Board hearing officer "unless it can be said that the Board lacks a rational basis for its application of law to the facts." *Longtin v. City of Lewiston,* 1998 ME 90, ¶ 11, 710 A.2d 901, 904–05; *accord Dorey v. Forster Mfg. Co.,* 591 A.2d 240, 241–42 (Me.1991).

[¶ 8] The parties agree that the relevant statute in this case is 39–A M.R.S.A. § 201(4). Section 201(4) "provides the standard for determining liability" when a work injury combines with a preexisting condition. *McAdam v. United Parcel Serv.,* 2001 ME 4, ¶ 11, 763 A.2d 1173, 1177. Section 201(4) reads:

> 4. Preexisting condition. If a work-related injury aggravates, accelerates or combines with a preexisting physical condition, any resulting disability is com-pensable only if contributed to by the employment in a significant manner.

### A. Legal Causation

[¶ 9] When a case appears to come within section 201(4), the hearing officer must first determine whether the employee has suffered a work-related inju-ry. *Derrig v. Fels Co.,* 1999 ME 162, ¶ 6, 747 A.2d 580, 582. "If the employee is found to have an injury, then subsection 201(4) is applied if the employee has a condition that preceded the injury." *Id.* The term "work-related injury" is short-hand for the requirement from 39–A M.R.S.A. § 201(1) (2001) that an injury "aris[e] out of and in the course of employ-ment." *See Comeau v. Me. Coastal Servs.,* 449 A.2d 362, 366–67 (Me.1982). An injury arises out of and in the course of employ-ment when there is a sufficient connection between the injury and the employment. *Id.*

[¶ 10] The hearing officer in this case concluded that Celentano suffered a work-related injury, that is an injury that "arose

out of and in the course of" his employment because "the accident in this case has a clear explanation: Employee tripped on the leg of a table at his workplace."

[¶ 11] In making the determination that the injury "arose out of and in the course of" employment, the hearing officer did not cite to *Bryant*, 444 A.2d 329. The Department argues that the hearing officer failed to apply the standard for legal cause enunciated in *Bryant*. Celentano does not dispute that the *Bryant* legal causation standard is applicable.

[¶ 12] The facts in *Bryant* are similar to this case. In *Bryant*, the employee fell off a stool at work, experiencing pain in his lower back, and the pain kept him from working and engaging in many physical activities that he had done prior to the fall. *Bryant*, 444 A.2d at 331–32. It was discovered that he was affected with asymptomatic spondylolisthesis prior to the fall from the stool. *Id.* at 332. The Commissioner found that the fall made the preexisting condition symptomatic but that the fall itself was not a work injury. *Id.* at 333. We vacated the Commissioner's determination that the injury was not compensable. *Id.* at 343. We held that in a combined effects case, the "arising out of and in the course of" requirement is satisfied by a showing of both medical and legal cause. *Id.* at 336. With regard to legal cause we distinguished situations in which the employee just happened to be at work when the disability arose from those where the disability occurred only because an employment condition increased the risk of disability above the risks that the employee faced in everyday life. *Id.* at 337. We said that "to meet the test of legal cause where the employee bears with him some 'personal' element of risk because of a preexisting condition, the employment must be shown to contribute some substantial element to increase the risk, thus offsetting the personal risk which the employee brings to the employment environment." *Id.*

[¶ 13] In *Bryant,* we found that the employee had shown medical causation because the preexisting back condition had been asymptomatic before the fall and the combined effects of the condition and fall disabled the employee. *Id.* at 343. We also found that there was legal causation because "the event precipitating the onset of his symptoms (*e.g.*, the fall from the stool) meets the requirements of 'legal cause' in that it results from a risk attributable to the work activity of the employee." *Id.*

[¶ 14] The Department argues that legal causation has not been shown here because Celentano's work activity did not "contribute some substantial element to increase the risk" of his sustaining a disability. However, the hearing officer found, after hearing a description of the table legs and finding that another corrections officer also caught his foot on the table leg, that the table leg was the mechanism that made Celentano trip and experience immediate pain. This is sufficient for a finding of legal causation, just as the fact in *Bryant* that the employee was sitting on a stool to do his work while other employees were moving around him was sufficient to establish legal causation in that case.

## B. Contribution by the Employment in a Significant Manner

[¶ 15] Because the hearing officer did not err in concluding that Celentano's injury arose from and out of his employment, the first requirement in section 201(4), that is, the existence of a work injury, is satisfied. The remaining issue is whether the combination of the work-related injury and Celentano's preexisting condition resulted in a disability and whether the disability was "contributed to by the

employment in a significant manner." 39–A M.R.S.A. § 201(4).[1]

[¶ 16] The hearing officer found that Celentano had an asymptomatic back condition due to his 1992 injury and that before the 2001 injury, he was completely free from pain, able to perform all of the duties of a corrections officer, and able to participate in several athletic activities. Based on the medical opinions that the parties submitted, the hearing officer found that Celentano's "2001 work injury contributed to his disability in a significant manner." The hearing officer relied on and quoted from one of the doctor's opinions that "even though it seems like it was a relatively trivial incident, that was enough to tip the scales to cause Mr. Celentano to have significant nerve root compression."

[¶ 17] Section 201(4) provides that when a work injury combines with a preexisting physical condition and the result is that the employee is disabled, the disability is compensable only if the employment significantly contributed to the disability. Here, the work injury combined with the 1992 back injury, and the result was that Celentano could no longer perform the duties of a corrections officer or engage in athletic activities. The combination of the work injury and the preexisting condition rendered him disabled.

[¶ 18] The Department contends that the hearing officer's finding that Celentano's "work injury contributed to his disability in a significant manner" is not the same as a finding that the *employment* contributed to the disability in a significant manner. We agree that the appropriate analysis is whether the employment, rather than the injury, contributed significantly to the em-

ployee's disability. However, the hearing officer's findings regarding the conditions of employment demonstrate that the hearing officer was aware that it was the employment, and not the injury, that had to contribute in a significant manner to the disability. The act of getting up from the table that caused the injury was part of the work activity, and the hearing officer found that this work activity was a significant factor in causing the disability. While the incident itself may have been trivial, it nevertheless constitutes employment activity. That activity caused Celentano to suffer from significant nerve root compression that disabled him from performing the requirements of his job. We conclude the hearing officer correctly applied the statute.

[¶ 19] The Department also argues that section 201(4) requires that the work activity be such a substantial mechanism of the injury that it would likely have caused disability even without the preexisting condition. However, the plain language of section 201(4) does not support such an interpretation.

[¶ 20] The hearing officer did not err in the determination of legal causation or in the application of section 201(4) to the facts.

The entry is:

Decision of the hearing officer is affirmed.

---

1. The Department complains that the hearing officer failed to apply section 201(4). Although the hearing officer did not cite section 201(4) in the decision, an analysis of the deci-

sion reveals that she applied the statute. Thus, the question addressed here is not whether the hearing officer applied section 201(4) but whether she did so correctly.